IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOSEPH BARNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-1335 C |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

REGINALD T. BLADES, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 514-7300
Facsimile: (202) 307-0972
reginald.blades@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

JOHN NOEL
Attorney
Office of General Counsel
Department of the Navy
Washington, D.C.

April 1, 2005

# TABLE OF CONTENTS

Page

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. Interpreting RCFC 23 . . . . . . . . . . . . . . . 4

a. This Court's previous Rule 23 . . . . . . . . 4

b. This Court's current Rule 23 . . . . . . . . . 5

II. Appropriateness Of Class Actions In Government Pay Cases . . . . . . . . . . . . . . . 6

III. Standard Of Review . . . . . . . . . . . . . . . . 8

a. "Rigorous Analysis" and "Close Look" . . . . . 8

b. Plaintiffs bear the burden of proof . . . . . 9

IV. Requirements Of RCFC 23 . . . . . . . . . . . . . 10

V. The Proposed Class Is Large, But Not Manageable . . . . . . . . . . . . . . . . . . . 11

VI. No Common Issues; No Predominate Commonality . 13

VII. Plaintiffs' Claims Are Not Typical Of Potential Class Claims . . . . . . . . . . . . . 18

VIII. Fairly And Adequately Protect The Interests Of The Class . . . . . . . . . . . . . . . . . . 21

IX. Class Action Not Superior . . . . . . . . . . . . 24

X. Discovery . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

Page

CASES

Abel v. United States,
18 Cl. Ct. 477 (1989) . . . . . . . . . . . . . . . . . . 9

Abrams v. United States,
57 Fed. Cl. 439 (2003) . . . . . . . . . . . . . . . . 15

Amchem Products, Inc. v. Windsor,
521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . 9

Armitage v. United States,
18 Cl. Ct. 310 (1989) . . . . . . . . . . . . . . 7, 8, 12

Bacon v. Honda of Amer. Manufacturing,
370 F.3d 565 (6th Cir. 2004) . . . . . . . . . . . . . . 9

Banner v. United States,
38 Fed. Cl. 700 (1997) . . . . . . . . . . . . . . . . . 6

Bell Atlantic Corp. v. AT&T Corp.,
339 F.3d 294 (5th Cir. 2003) . . . . . . . . . . . . . . 9

Berkley v. United States,
45 Fed. Cl. 224 (1999) . . . . . . . . . . . . . . . 5, 6

Black v. United States,
24 Cl. Ct. 471 (1991) . . . . . . . . . . . . . . . . . 15

Buchan et al. v. United States,
27 Fed. Cl. 222 (1992) . . . . . . . . . . . . . . . 8, 16

Busby School of the Northern Cheyenne Tribe v. United States,
8 Cl. Ct. 596 (1985) . . . . . . . . . . . . . . . . 15, 17

Canfield v. United States,
14 Cl. Ct. 687 (1988) . . . . . . . . . . . . . . . . . 23

Celestine v. Citgo Petroleum Corporation,
165 F.R.D. 463 (W.D. La. 1995) . . . . . . . . . . . . . 8

Christian v. United States,
46 Fed. Cl. 793 (1999) . . . . . . . . . . . . . . . . 20

TABLE OF AUTHORITIES (cont'd)

Page

CASES (cont'd)


Christopher Village, LP v. United States,
50 Fed. Cl. 635 (2001) . . . . . . . . . . . . . . . . . . 6

Clincher v. United States,
205 Ct. Cl. 8, 499 F.2d 1250 (1974),
cert. denied, 420 U.S. 991 (1976) . . . . . . . . . . . . 7

Cooke v. United States,
1 Cl. Ct. 695 (1983) . . . . . . . . . . . . . . . . 17, 20

Cutright v. United States,
15 Cl. Ct. 576 (1988) . . . . . . . . . . . . . . . . 6, 15

G.M. Shupe, Inc. v. United States,
5 Cl. Ct. 662 (1984) . . . . . . . . . . . . . . . . . 17

Gaffney v. U.S.,
834 F. Supp. 1 (D.D.C. 1993) . . . . . . . . . . . 14, 15

Gariety v. Grant Thorton, L.L.P.,
368 F.3d 356 (4th Cir. 2004) . . . . . . . . . . . . . 9

General Telephone v. Falcon,
457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . 8

In re Amer. Medical Sys.,
75 F.3d 1069 (6th Cir. 1996) . . . . . . . . . . . . . 10

Kominers v. United States,
3 Cl. Ct. 684 (1983) . . . . . . . . . . . . . . . . 7, 23

Lienhart v. Dryvit Sys.,
255 F.3d 138 (4th Cir. 2001) . . . . . . . . . . . . . 10

McManus v. Fleetwood Enters.,
320 F.3d 545 (5th Cir. 2003) . . . . . . . . . . . . . 10

Moore v. United States,
41 Fed. Cl. 394 (1998) . . . . . . . . . . . . . . . . 21

O'Hanlon v. United States,
7 Cl. Ct. 204 (1985) . . . . . . . . . . . . . . . . . 7, 8

TABLE OF AUTHORITIES (cont'd)

Page

CASES (cont'd)

Peterson v. Oklahoma City Housing Authority,
545 F.2d 1270 (10th Cir. 1976) . . . . . . . . . . . . . . 24

Quinault Allottee Ass'n v. United States,
197 Cl. Ct. 134, 453 F.2d 1272 (1972) . . . . . . . . . 5, 23

Reed v. Bowen,
849 F.2d 1307 (10th Cir. 1988 ) . . . . . . . . . . . . . 10

Saunooke v. United States,
8 Cl. Ct. 327 (1985) . . . . . . . . . . . . . . . . . . . 17

Taylor v. United States,
41 Fed. Cl. 440 (1998) . . . . . . . . . . . . . . . . . 7, 21

United States v. Cook,
795 F.2d 987 (Fed. Cir. 1986) . . . . . . . . . . . . 22, 23

Valley Drug Co. v. Geneva Pharms, Inc.,
350 F.3d 1181 (11th Cir. 2003) . . . . . . . . . . . . . . 10

Vienza v. Union Pacific Railroad,
360 F.3d 496 (5th Cir. 2004) . . . . . . . . . . . . . . . 9

Williams Industries, Inc. v. United States,
155 Ct. Cl. 360, 295 F.2d 822 (1961),
cert. denied, 370 U.S. 903 (1962) . . . . . . . . . . . . 17

STATUTES

28 U.S.C. § 1491(a) . . . . . . . . . . . . . . . . . . . . . . 16

5 U.S.C. § 5545 . . . . . . . . . . . . . . . . . . . . . . . 2, 13

TABLE OF AUTHORITIES (cont'd)

Page

RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS

RCFC 20(a) . . . . . . . . . . . . . . . . . . . . . . . . 22

RCFC 23 (pre-2002) . . . . . . . . . . . . . . . . . . . . 4, 6

RCFC 23 . . . . . . . . . . . . . . . . . . . . 3, 4, 6, 18, 27

RCFC 23(a) . . . . . . . . . . . . . . . . 8, 10, 11, 13, 18, 21

RCFC 23(b) . . . . . . . . . . . . . . . . . . . 11, 13, 18, 24

RCFC 23(a) and (b) . . . . . . . . . . . . . . . . . . . . 6

RCFC 23(c)(2) . . . . . . . . . . . . . . . . . . . . . 17, 22

FEDERAL RULES OF CIVIL PROCEDURE

FRCP 23 . . . . . . . . . . . . . . . . . . . . . . . . . . 8

FRCP 23 (a) and (b)(3) . . . . . . . . . . . . . . . . . . 6

RULES COMMITTEE NOTES
(accompanying the May 1, 2002 revision of the Rules of the United States Court of Federal Claims)

General Rules Committee Note . . . . . . . . . . . . . . . . 4

Rules Committee Note to RCFC 23 . . . . . . . . . . . . . . . 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOSEPH BARNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-1335 C |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION

Pursuant to the Court's January 27, 2005 order, the parties, in their joint preliminary status report, filed February 2, 2005, established a schedule for placing the issue of class certification before the Court. Pursuant to that schedule, plaintiffs filed a motion to certify a class action, and we file this opposition. Because the proposed class action does not satisfy the requirements imposed by rule 23 of the rules of this Court ("RCFC"), we respectfully request the Court to deny class certification.

STATEMENT OF THE ISSUE

Whether plaintiffs have satisfied the requirements for class certification imposed by RCFC 23.

STATEMENT OF THE CASE

Plaintiffs are three, current, non-military employees of the Department of the Navy. Plaintiffs Barnes and Holub work at the Navy Regional Medical Center, San Diego. Plaintiff Barnes works on the facility staff, and plaintiff Holub works as a computer operator. Plaintiff Yosuico works at the Navy Hospital, Camp Pendleton, as a clinical nurse. Plaintiffs allege that when they

have been regularly scheduled to work at night and have not worked because they have taken leave for less than eight hours during the pay period or have been excused from work because of a holiday, they have not received the correct amount of pay for that leave time because they did not receive the 10 percent night differential pay that they would have received if they had worked and not taken leave or been excused for the holiday. See 5 U.S.C. § 5545.

Plaintiffs seek to represent a putative class of employees that plaintiffs assert might be similarly situated as plaintiffs because they also may have been regularly scheduled to work at night, may have taken leave for less than eight hours during the pay period or been excused from work because of a holiday, and may not have been paid correctly with regard to the night differential pay.

Plaintiffs propose a class defined as follows:

> Non-military employees of the Department of the Navy who were or are employed after August 18, 1998, which represents the six year period prior to the filing of the original complaint in this matter;
>
> whose regularly scheduled tour differential pay for night work pursuant to 5 U.S.C. § 5545 was unpaid during periods of paid leave for periods of leave of less than eight (8) hours within a pay period;
>
> and/or whose "pay" for being excused from duty on officially authorized holidays under 5 U.S.C. §§ 6103, 6104 did not include night differential pay under 5 U.S.C. § 5545 which the employee would have earned "for a day of which an ordinary days's work is performed";

> included are registered nurses, nurse anesthetists, licensed practical or vocational nurses, physician assistants, nurse's assistants, dental assistants, pharmacists, certified or registered respiratory therapists, licensed physical therapists, occupational therapists, rehabilitation therapy assistants, technicians, nuclear medicine technicians, medical instrument technicians, medical instrument technicians, medical clerks, facility staff, housekeeping staff, information systems clerks and managers, computer operators, warehouse staff, quality assurance staff, and all other civilian personnel [which include, but are not limited to security, food service and maintenance personnel] who regularly were (or are) scheduled to work between the hours of 6 p.m. and 6 a.m. at a hospital or medical facility operated by or for the Department of the Navy;
>
> excluded are all employees that are not entitled by law to be paid night differential pay.

Because plaintiffs' proposed class does not satisfy the requirements imposed by RCFC 23, we oppose their motion for class certification and respectfully request the Court to deny class certification.

SUMMARY OF THE ARGUMENT

Plaintiffs' proposed class does not satisfy the requirements imposed by RCFC 23. Most importantly, plaintiffs' proposed class neither presents any common questions of law or fact nor do any common questions predominate. Common issues must predominate or a "class action" will be merely a collection of individual claims requiring individual proofs, providing no procedural benefit not attainable through joinder or consolidation. To apply the class

action rule only to gather potential claimants who may have similar claims, each of which will require individual proof as to liability and damages, would be an improper use of the class action procedure. In this matter, there are no common issues for the Court to decide; all issues as to both liability and damages require individual proofs. Class certification, therefore, should be denied.

## ARGUMENT

### I. Interpreting RCFC 23

Class actions in this Court are governed by RCFC 23, which was completely rewritten in connection with the revision of the Court's rules that became effective May 1, 2002. The general Rules Committee Note accompanying the May 1, 2002 revision of this Court's rules states:

> In this 2002 revision, the court has endeavored to create a set of rules that conforms to the Federal Rules of Civil Procedure as amended through November 30, 2001, to the extent practicable given differences in jurisdiction between the United States district courts and the United States Court of Federal Claims. Consistent with this objective, interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure. The court's own Rules Committee Notes are intended primarily to state the source of a given rule but in some instances also provide interpretive guidance.

#### a. This Court's previous Rule 23

Prior to the May 2002 adoption of the Court's current rules, RCFC 23 stated:

> A motion to certify a class action shall be filed with the complaint and comply with Rule 3(c), with service to be made as provided in Rule 4. The court shall determine in each case whether a class may be maintained and under what terms and conditions.

Berkley v. United States, 45 Fed. Cl. 224, 227 (1999). This previous rule allowed broad discretion in the class-certification determination. Id. In applying the previous Rule 23, the Court was guided by the criteria set forth in Quinault Allottee Ass'n v. United States, 197 Cl. Ct. 134, 453 F.2d 1272 (1972). The Rules Committee Note to current RCFC 23 states, "In the main, the court’s [new] rule adopts criteria for certifying and maintaining a class action as set forth in Quinault . . . ."

b. This Court's current Rule 23

The Rules Committee Note accompanying RCFC 23 states:

> RCFC was completely rewritten. Although the court's rule is modeled largely on the comparable federal rule, there are significant differences between the two rules. . . .
>
> Because the relief available in this court is generally confined to individual money claims against the United States, the situations justifying the use of a class action are correspondingly narrower than those addressed in FRCP 23. Thus, the court's rule does not accommodate, inter alia, the factual situations redressable through declaratory and injunctive relief contemplated under FRCP 23(b)(1), (2).
>
> Additionally, unlike the federal rule, the court's rule contemplates only opt-in class certifications, not opt-out classes. The later were viewed as inappropriate here because of the need for specificity in money judgments against the United States, and the

> fact that the court's injunctive powers – the typical focus of an opt-out class – are more limited than those of a district court.

Comparing RCFC 23 with Rule 23 of the Federal Rules of Civil Procedure reveals that although there are significant differences between the rules as a whole, considering that in this Court the only defendant is the United States, RCFC 23(a) and (b) establish almost identical requirements as exist under FRCP 23 (a) and (b)(3).

Interpreting RCFC 23, therefore, involves consideration of the express requirements of the rule as informed by the decisions of this Court, including prior decisions involving similar requirements under Quinault, and the decisions of other Federal courts addressing the requirements of FRCP 23(a) and (b)(3).

## II. Appropriateness Of Class Actions In Government Pay Cases

An additional important consideration in applying RCFC 23 is whether class actions are appropriate to resolve pay claims by Government employees when each claim will require individual proof.

In class-certification decisions of this Court under the prior version of RCFC 23, there is substantial discussion about whether class actions are disfavored. Compare Christopher Village, LP v. United States, 50 Fed. Cl. 635, 642 (2001) (disfavored); Banner v. United States, 38 Fed. Cl. 700, 703 (1997) (same); Cutright v. United States, 15 Cl. Ct. 576, 578 (1988) (same); with Berkley, 45 Fed. Cl. at 227-28 (after discussing the long line of prior cases suggesting disfavored

status, finding class certification appropriate); Taylor v. United States, 41 Fed. Cl. 440, 444 (1998) ("[T]here appears to be no basis for stating that class actions are 'generally disfavored' and should be used only in 'rare and extraordinary cases.'"). The history leading to the promulgation of the rule and subsequent case precedent, however, establish that application of the rule should be reserved for extraordinary cases and that its use generally is disfavored. O'Hanlon v. United States, 7 Cl. Ct. 204, 206 (1985).

In particular, class action lawsuits traditionally have been considered inappropriate as a method for litigating the rights of Government employees in this Court. Armitage v. United States, 18 Cl. Ct. 310, 315 (1989), citing Clincher v. United States, 205 Ct. Cl. 8, 12, 499 F.2d 1250, 1253 (1974), cert. denied, 420 U.S. 991 (1976); see also Kominers v. United States, 3 Cl. Ct. 684, 685 (1983). There appears to be at least three reasons for this.

In Armitage, the Court explained:

> An employee for the Federal Government has an ongoing legal relationship with his or her employer that carries with it a well defined administrative apparatus. That may be why the Court of Claims taught that the test case, brought by one or a few plaintiffs, has been the traditional method of litigating the rights of Government employees in this Court.

Id.

In addition, because all suits in this Court involve claims for money damages against the United States, the Court has historically favored individual proof of damages by claimants.

Problems involving a payout to a large number of people who must still individually demonstrate entitlement creates the risk that common legal questions will be dwarfed. Buchan et al. v. United States, 27 Fed. Cl. 222 (1992).

A third reason appears to be that suits by employees nearly always involve the resolution of individual factual issues at some point in the proceedings. In fact, the predominance of individual factual questions is nearly always the factor, or at least one of the factors, that tips the scale against class certification in civilian pay actions. See, e.g., Buchan, supra; Armitage, supra; and O'Hanlon, supra.

The Federal district courts have been cognizant of this important consideration as well. Class certification of employment claims has been rejected under FRCP 23 when individual proofs are required to establish both liability and damages. See, e.g., Celestine v. Citgo Petroleum Corporation, 165 F.R.D. 463, 469-71 (W.D. La. 1995).

In this matter, there are no common issues for the Court to decide; all issues as to both liability and damages require individual proofs. Class certification, therefore, should be denied.

III. Standard Of Review

a. "Rigorous Analysis" and "Close Look"

A class should be certified only after a rigorous analysis of the certification requirements contained in RCFC 23(a). General Telephone v. Falcon, 457 U.S. 147, 161 (1982) ("[W]e

reiterate today that a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."). Moreover, when addressing the requirements of RCFC 23(b), the Court must take a "close look" at the predominance and superiority requirements. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615-16 (1997) ("Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria . . . ."). See also Bell Atlantic Corp. v. AT&T Corp., 339 F.3d 294, 301 (5th Cir. 2003) ("district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class" and "in those cases where the plaintiff seeks to certify a class under Rule 23(b)(3), the Rules invite a close look at the case before it is accepted as a class action" (internal quotations and citations omitted)); Bacon v. Honda of Amer. Manufacturing, 370 F.3d 565, 569-70 (6th Cir. 2004) (applying the rigorous-analysis standard); Gariety v. Grant Thorton, L.L.P., 368 F.3d 356, 365 (4th Cir. 2004) (applying both the close-look and rigorous-analysis standards); Vienza v. Union Pacific Railroad, 360 F.3d 496, 503 (5th Cir. 2004) (applying the rigorous-analysis standard).

b. Plaintiffs bear the burden of proof

"[T]he burden of proof rests on plaintiffs to show that, under their particular circumstances, a class action would be appropriate." Abel v. United States, 18 Cl. Ct. 477, 478 (1989).

Although the Abel decision was rendered under this Court's prior Rule 23, the allocation of this burden to plaintiffs is universally accepted pursuant to FRCP 23. See, e.g., Valley Drug Co. v. Geneva Pharms, Inc., 350 F.3d 1181, 1187 (11th Cir. 2003) ("The burden of proof to establish the propriety of class certification rests with the advocate of the class."); McManus v. Fleetwood Enters., 320 F.3d 545, 548 (5th Cir. 2003) ("The party seeking certification bears the burden of proof."); Lienhart v. Dryvit Sys., 255 F.3d 138, 146 (4th Cir. 2001) ("The party seeking class certification bears the burden of proof."); In re Amer. Medical Sys., 75 F.3d 1069, 1079 (6th Cir. 1996) (same); Reed v. Bowen, 849 F.2d 1307, 1309 (10th Cir. 1988 ) ("A party seeking to certify a class is required to show under a strict burden of proof, that all the requirements of [Fed. R. Civ. P.] 23(a) are clearly met." (internal quotations omitted)). Accordingly, plaintiffs bear the burden to prove that the proposed class satisfies all of the requirements of RCFC 23.

IV. Requirements Of RCFC 23

RCFC 23(a) enumerates the prerequisites for maintaining a class action:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

RCFC 23(b) imposes additional requirements:

> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the United States has acted or refused to act on grounds generally applicable to the class; and (2) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of a class action.

Plaintiffs must prove that each requirement has been satisfied. Plaintiffs have not met that burden. The Court should, therefore, deny class certification.

V. <u>The Proposed Class Is Large, But Not Manageable</u>

Pursuant to RCFC 23(a), the class must be "so numerous that joinder is impracticable," and pursuant to RCFC 23(b), the Court must consider "the difficulties likely to be encountered in the management of a class action." Although the proposed class may be numerous, it is unmanageable.

First, if the class is to be manageable, the potential class members must be easily identifiable; one must be able to determine who, potentially, belongs within the class. Plaintiffs propose a class composed of "Non-military employees of the Department of the Navy who were or are employed after August 18,

1998 . . . who regularly were (or are) scheduled to work between the hours of 6 p.m. and 6 a.m. at a hospital or medical facility operated by or for the Department of the Navy," and who were not paid properly for leave or holiday time away from nightwork. This vague and overly broad definition does not allow for identification of proposed class members. A preliminary investigation reveals a potential of over 300 facilities nationwide at which a proposed class member might work, including approximately 22 hospitals, 14 dental centers, 3 Naval Medical Centers, 6 ambulatory care clinics, and 261 branch dental or medical clinics. Given the terms in which plaintiffs have defined the class, there is no way at this time to determine accurately the membership of the class. Simply put, the vagueness of the proposed class renders it unmanageable. See, e.g., Armitage, 18 Cl. Ct. at 313 (finding numerosity satisfied by 100,000 class members, yet denying certification based in part upon unidentifiable class members).

Moreover, the potential class members are geographically dispersed throughout the United States, and occupy a wide array of job positions with widely varying responsibilities under any number of different managerial structures and authorities. Coordinating and communicating with such a scattered and varied group poses logistical problems that run counter to the judicial efficiency a class action is meant to achieve.

No less important, plaintiffs have defined their proposed class to include former employees. The Federal Government

maintains only the last known address for these employees. Those who are receiving some form of Federal retirement may be traceable through the Office of Personnel Management. Otherwise, the Federal Government does not have information that would assist efforts to locate these employees. There is no guarantee plaintiffs will be able to notify all potential members of the class, even if they could be identified.

Because the plaintiffs have failed to satisfy this initial requirement of RCFC 23, the Court should deny class certification.

VI. No Common Issues; No Predominate Commonality

RCFC 23(a) requires "questions of law or fact common to the class," and RCFC 23(b) requires that these common questions "predominate over any questions affecting only individual members." In this case, there are no common issues for the Court to decide. All issues as to both liability and damages will require individual proof.

In essence, plaintiffs have proposed a class composed of all civilian employees of naval medical facilities who have not been paid correctly with regard to night differential and leave with pay statutes. Pursuant to 5 U.S.C. § 5545, "nightwork is regularly scheduled work between the hours of 6:00 p.m. and 6:00 a.m., and includes – (1) periods of absence with pay during these hours due to holidays; and (2) periods of leave with pay during these hours if the periods of leave with pay during a pay period total less than eight hours. . . . an employee is entitled to

pay for nightwork at his rate of pay plus premium pay amounting to 10 percent of that basic rate." Plaintiffs allege that they and the proposed class members are not paid properly when they take leave or are excused because of a holiday from regularly scheduled nightwork. Plaintiffs, however, identify no common legal or factual question for the Court to decide.

The only way to determine whether an employee has been paid properly in these circumstances is to ascertain whether the employee was regularly scheduled to work at night, whether during those nightwork hours the employee took leave for a total of less than eight hours during the pay period or was excused from work because of a holiday, and whether the employee was paid the proper night differential for that leave or holiday time. There is no common issue of law or fact to be decided that can be applied to more than one, individual employee to make that determination. Plaintiffs cannot identify a common legal or factual issue that applies to the three named plaintiffs, much less to the proposed class as a whole. The Court should, therefore, deny class certification.

The analysis in Gaffney v. U.S., 834 F. Supp. 1 (D.D.C. 1993), is directly relevant to this case. The Gaffney plaintiffs requested the court to certify two plaintiff classes that would consist of virtually all present and former employees who received a variety of additional pay, including Sunday premium pay. In denying class certification, the Gaffney court stated:

> First, common questions of law do not

> "predominate" in this case. Rather, there is only a single common question: the government's liability for Sunday premium pay on days when employees take paid leave. That issue, moreover, has been resolved in another forum, the Court of Appeals for the Federal Circuit. The remaining issues – whether each plaintiff was "regularly scheduled" to work on Sundays, whether the plaintiff took leave under one of the leave-with-pay statutes, and the amount of backpay to which he or she is entitled – are all questions affecting only individual members.

Gaffney, 834 F. Supp. at 6. See also, e.g., Black v. United States, 24 Cl. Ct. 471, 477 (1991) (denying class certification because potential plaintiffs had burden of proving entitlement to disability benefits, which necessitated distinct individual determinations regarding the degree of disability, type of disability ,and diagnosis by physicians); Cutright, 15 Cl. Ct. at 578-79 (denying class certification because individual issues were overriding and entitlement to benefits was contingent upon facts that varied for the different types of government employees); Busby School of the Northern Cheyenne Tribe v. United States, 8 Cl. Ct. 596, 603 (1985) (denying class certification because each plaintiff would need to prove entitlement to damages claimed).

In the predecessor case to this action, in which plaintiffs requested the Court to certify a very similar proposed class, Abrams v. United States, 57 Fed. Cl. 439 (2003), the Court denied class certification specifically because there were no common issues of law or fact. The Court specifically held that factual issues were crucial to determining damages and that separate

factual determinations would be needed. In particular, each plaintiff would need to prove that he or she (a) qualified for the additional pay or premium pay under the applicable statutes, (b) normally received the premium pay for regularly scheduled nightwork, and (c) did not receive the correct pay. According to the Court, separate factual determinations would need to be made for each potential class member. Consequently, certification was denied because there were no common issues of fact or law.

If the Court were to certify a class action, the Court would face either 5,000 different presentations of proof concerning whether each individual class member was properly paid for leave, or, alternatively, the class members will be precluded from raising individual arguments. In Buchan et al., supra, plaintiff FBI agents sought overtime pay for the time they spent dealing with a riot from November 23, through December 6, 1987. They requested permission to proceed as a class action. Unlike this case, all of the plaintiffs performed the same type of work. Nevertheless, the Court denied the motion for class certification. The Court explained that "because class members may be precluded from raising individual arguments, this court has serious concerns that each member may not be adequately represented by the named plaintiffs." 27 Fed. Cl. at 226.

Moreover, Congress has limited this Court's jurisdiction to claims for which money damages may be awarded. 28 U.S.C. § 1491(a). Consistent with the principle that waivers of sovereign immunity must be construed narrowly, neither this Court

nor its predecessor has indicated a tolerance for speculation in damage determinations. Busby School, 8 Cl. Ct. at 603 (Court unwilling to speculate about damage considerations; each plaintiff would be required to prove entitlement); Saunooke v. United States, 8 Cl. Ct. 327, 332 (1985) (factual issues related to status and damages warrant denial of class certification); Cooke v. United States, 1 Cl. Ct. 695, 699 (1983) (same).

Accordingly, this Court has required each claimant, in sustaining his or her burden of proof, to provide sufficient bases for determining the damages sought. See Williams Industries, Inc. v. United States, 155 Ct. Cl. 360, 376, 295 F.2d 822, 831 (1961), cert. denied, 370 U.S. 903 (1962); G.M. Shupe, Inc. v. United States, 5 Cl. Ct. 662, 719, 740 (1984). It is inconsistent with the Court's unwillingness to speculate as to damage determinations to permit a large number of unnamed, unknown claimants to seek relief through a class action. Further evidence of this unwillingness may be seen in the provision of RCFC 23(c)(2) requiring members of a prospective class to request inclusion in the class before they may become part of it.

In addition to the determinations that will need to be made as to whether each class member was regularly scheduled to work at night, each class member will have taken a different amount of authorized leave within each pay period within the applicable statute of limitations, necessitating individual treatment. Similarly, the work status of each plaintiff for each holiday must be reviewed as well to determine whether it encompassed a

regularly scheduled night shift. The claims, therefore, are individual claims, not class claims, and can be prosecuted upon only an individual basis. Because plaintiffs have failed to establish commonality, this most central and critical requirement of RCFC 23, the court should deny class certification.

## VII. Plaintiffs' Claims Are Not Typical Of Potential Class Claims

RCFC 23(a) requires that "the claims of the representative parties are typical of the claims of the class." RCFC 23(b) requires that "the United States has acted or refused to act on grounds generally applicable to the class." Plaintiffs, however, fail to demonstrate that their claims are typical of the claims of the potential class members or that the United States has acted or refused to act upon grounds generally applicable to the class. In fact, there appears to be dissimilarity between the plaintiffs and between the plaintiffs and the class they seek to represent.

Plaintiffs are a facility staff worker, a computer operator, and a clinical nurse. Two of the plaintiffs are non-health care workers who work at a medical center. The other plaintiff is a clinical nurse who works at a hospital. Two plaintiffs are paid under the General Schedule; the other plaintiff is paid under the Federal Wage Schedule. The three plaintiffs occupy three very dissimilar positions with entirely different job duties and responsibilities and different management structures and authorities.

Plaintiffs propose a class that contains a vast variety in

the types of job positions that are located at a wide array of facilities with any number of different management structures and authorities. There are health care workers[1] and non-health care workers.[2] There are General Schedule employees and Federal Wage Schedule employees. There are hospitals, dental centers, Naval Medical Centers, ambulatory care clinics, and branch dental or medical clinics.

Among the health care positions there is vast variety in the types of job positions and the nature of the work required by each position. Similarly, among the non-health care positions there is vast variety in the types of job positions and the nature of the work required by each position.

Plaintiffs’ seek to represent an essentially incalculable class of health care providers and an equally incalculable class of workers in non-health care positions. The health care workers will have entirely different job duties than the non-health care workers. Within each of those two divisions, a nurse anesthetist will have entirely different job duties than a dental assistant

---

[1] Plaintiffs’ motion describes the potential class as including registered nurses, nurse anesthetists, licensed practical or vocational nurses, physician assistants, nurse’s assistants, dental assistants, pharmacists, certified or registered respiratory therapists, licensed physical therapists, occupational therapists, rehabilitation therapy assistants, technicians, nuclear medicine technicians, medical instrument technicians, medical instrument technicians, medical clerks.

[2] Plaintiffs' motion describes the proposed class as also including facility staff, housekeeping staff, information systems clerks and managers, computer operators, warehouse staff, quality assurance staff, and all other civilian personnel, which include, but are not limited to security, food service and maintenance personnel.

or a pharmacist; a facility staff worker will have different job duties than a worker on the housekeeping staff or the warehouse staff or a computer operator – all jobs among the wide variety included by plaintiffs in their proposed class.

Most of the positions that plaintiffs propose to include in their proposed class are dissimilar from one another. Each of the positions that plaintiffs propose to include in their proposed class necessarily requires the performance of different duties and functions than another position and, therefore, by definition, cannot be typical. Plaintiffs present no evidence to the contrary. In addition, plaintiffs conspicuously fail to make any representations concerning how their work and leave time are scheduled or how the work and leave time are scheduled for any of the job positions that they include in their proposed class.

Moreover, as discussed above, because the factual issues are likely to be particular to each plaintiff - for example, the hours worked and amount of leave utilized - the requirement of typicality of claims is not met. See Cooke, 1 Cl. Ct. at 699 (denying class certification because dissimilar factual issues regarding damages failed to meet typicality requirement); Christian v. United States, 46 Fed. Cl. 793, 816 (1999) (class certification partially denied because plaintiffs' claims turned in part upon particular career field and skill, and, therefore, typicality criteria was not met).

Finally, plaintiffs' present no evidence that the policies and practices at each of the more than 300 different facilities

where a proposed class member may work are the same. To the contrary, it is likely that the policies and practices of the various facilities differ (e.g., management practices or time and accounting pay procedures). Plaintiffs, therefore, have not and cannot demonstrate that these different facilities have acted in the same manner toward all potential class members. See, e.g., Moore v. United States, 41 Fed. Cl. 394, 399-400 (1998); Taylor, 41 Fed. Cl. at 446-47.

Because plaintiffs have failed to demonstrate that their claims will be typical of the claims of the potential class members that they seek to represent or that the United States has acted or failed to act upon grounds generally applicable to the class, the Court should deny class certification.

VIII. Fairly And Adequately Protect The Interests Of The Class

RCFC 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Plaintiffs have not demonstrated that they satisfy this requirement.

Plaintiffs appear simply to assume that potential class members will want to be class members under their leadership. Apparently, however, plaintiffs have persuaded only a few of the allegedly 5,000 members of the proposed class to participate as named plaintiffs. Moreover, the named plaintiffs work at only two of the more than 300 different facilities where a proposed class member might work, and both of those facilities are in Southern California. Plaintiffs provide no explanation as to how they

propose to represent the interests of a class that includes current and former employees under different pay schedules in such a vast variety of health care and non-health care positions at more than 300 different facilities of at least half a dozen different types. We note that any of plaintiffs' fellow present or former Federal employees who wish to join this case as party plaintiffs might qualify to do so under RCFC 20(a), or they may file their own individual action, if they so choose. There is no basis for plaintiffs' assumption that other potential class members have a desire to join in the filing of this suit at this time. Despite this, plaintiffs seek to use the Court's authority to bind the whole group, whether they are willing participants or not, which is not allowed, because RCFC 23(c)(2) allows for only an opt in class.

Further, public policy militates strongly against certifying a class of the type proposed by the named plaintiffs. As the court of appeals held in United States v. Cook, 795 F.2d 987, 990-93 (Fed. Cir. 1986), the requirement of consent filings is a limitation upon representative actions:

> We find persuasive, also, the statement of the District Court for the District of Columbia that:
>
>> the purpose of the ban on representa-tive actions was to prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of the lawsuit. Such situations unfairly left employers in the dark

> concerning the identity of the individuals whose claims would be litigated at trial.
>
> Arrington v. National Broadcasting Co., 531 F. Supp. 498, 501 (D.D.C. 1982). This view is bolstered by the provision requiring named party plaintiffs to opt in by filing written consent forms with the court. Together the amendments banning representative actions and requiring individual written consents sought "to eradicate the problem of totally uninvolved employees gaining recovery as a result of some third party's action in filing suit." Id. at 502.

Cook, 795 F.2d at 993 (footnote omitted); see also Canfield v. United States, 14 Cl. Ct. 687, 689-90 (1988). Although these cases consider consent filings under the Fair Labor Standards Act, the principle of limitations upon representative claims apply to the class action plaintiffs propose in this case.

In sum, three plaintiffs seek to prosecute the claims of an unnamed group purportedly in excess of 5,000 individuals in a vast variety of job positions located at numerous different facilities. Plaintiffs have failed to make any showing that they can fairly and adequately represent the interests of the vast and dissimilar class they seek to represent.

In addition to the Rule 23 criteria discussed above, this Court has stated more generally that class actions are only appropriate when they serve the interests of justice. Kominers, 3 Cl. Ct. at 686. The requirement that class certification be in the interests of justice ensures a weighing of the benefits of efficient resolution of issues against the need to protect the interests of all parties. See Quinault Allottee Ass'n, 197 Ct.

Cl. at 140, 453 F. 2d at 1275. Plaintiffs have not demonstrated that granting their motion would serve the interests of justice. Moreover, plaintiffs have not carried their burden of proving that a class action is appropriate in this case. Peterson v. Oklahoma City Housing Authority, 545 F.2d 1270, 1273 (10th Cir. 1976); Cash v. Swifton Land Corp., 434 F.2d 569, 571 (6th Cir. 1970). Requiring the United States to defend against the claims of so many unidentified individuals who have yet to demonstrate any interest in this litigation would be unfair and unjust.

IX. Class Action Not Superior

RCFC 23(b) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Because each employee, individually, would be required to establish entitlement to unpaid nightwork pay for leave or holiday time, a class action is not a superior case management tool. Certifying the proposed class would inundate this Court with thousands of claims, each of which would need to be proven individually as to both liability and damages. Certifying the proposed class would not allow the Court to manage effectively the litigation of multiple similar claims by permitting the efficient resolution of common issues because there are no common issues. Certifying the proposed class would merely multiply the number of individual claims the Court would be required to adjudicate. Because there are no common issues for the Court to decide, and all issues as to both liability and damages require individual proofs, plaintiffs have

failed to establish that a class action is the superior method of handling these claims, and the Court should deny class certification.

X. Discovery

Pursuant to the Court's January 27, 2005 order, plaintiffs have identified in their motion for class certification the discovery that they desire to pursue prior to certification. The discovery plaintiffs seek, however, would not support their request for class certification and should not be allowed by the Court.

Requests 1 and 3 seek "the Navy's acknowledgment that the plaintiff class was not paid the night 'premium pay' when they" (1) "used paid leave of less than eight hours within a pay period" and (3) "were excused from work on officially designated holidays." Request 5 incongruously seeks "the scope of the plaintiff class that was not paid night "premium pay" with respect to (1) and (3) above." To the extent request number 5 implicitly recognizes that not all members of the proposed class were "not paid the required night 'premium pay,'" plaintiffs cannot genuinely expect the "acknowledgment" sought by requests 1 and 3 that "the plaintiff class was not paid the required night "premium pay.'" Further, the closest plaintiffs have come in their attempt to identify a common issue is their assertion that all proposed class members were not paid the required nightwork pay. If we were to acknowledge that all proposed class members were not paid the required nightwork pay, that would defeat class

certification by removing the only potentially common issue. In any event, as we have demonstrated, whether any employee was properly paid with regard to leave or holiday time away from nightwork must be determined upon an individual basis for each employee. Consequently, we can neither "acknowledge" the alleged failure to pay nor identify the "scope" of a potential class of employees who were not paid properly without individual proof as to each employee potentially eligible for night pay, a process that is antithetical to a class action. Requests 1, 3, and 5 should be denied.

Requests 2 and 4 seek, with respect to requests 1 and 3, respectively, "the reasons why the plaintiff class was not paid the required night 'premium pay,'" and request 6 seeks "what, if any steps have been taken to correct the Navy's known night 'premium pay' payment problems with respect to (1) and (3)." As we demonstrated, positive responses to request 1 and 3 would defeat class certification and would, in any event, require individual proofs, which would be contrary to class action procedure. Moreover, why an employee may not have been paid properly and what action has been taken to avoid a recurrence has absolutely no bearing upon whether any proposed class member was paid properly. Either an employee was or was not properly paid. If an employee was not properly paid, knowing why the employee was not properly paid will neither establish nor defeat the claim. Requests 2, 4, and 6 should be denied.

Additionally, plaintiffs propose two document requests. The

documents that plaintiffs request pursue the same inquiry as plaintiffs' other requests, and should similarly be denied.

Plaintiffs request documents ("earnings and leave statements") "for the plaintiff class to determine the scope of the class and to compute damages." Without knowing the scope of the class, we cannot produce documents for the class. This request does not support plaintiffs' request to certify a class; it presumes the existence of an undefined class. Further, there are no "earnings and leave statements for the plaintiff class;" there are only earnings and leave statements for each individual employee. Plaintiffs provide no basis for why they should be able to examine the earnings and leave statements for each employee (which could be produced only under a protective order consistent with the Privacy Act) so that the plaintiffs can determine the scope of a class. Plaintiffs have already proposed a class, which, as we have demonstrated, does not satisfy the requirements imposed by RCFC 23. This request should be denied.

Plaintiffs also request documents related to the alleged failure to pay properly for nightwork and what action has been taken to correct this alleged "problem." As demonstrated above, why an employee may not have been paid properly and what action has been taken to avoid a recurrence has absolutely no bearing upon whether any proposed class member was paid properly. Either an employee was or was not properly paid. If an employee was not properly paid, knowing why the employee was not properly paid will neither establish nor defeat the claim. This request should

be denied.

Plaintiffs' proposed discovery requests will not support plaintiffs' request for class certification and are objectionable in any event. Plaintiffs' proposed requests should be denied.

CONCLUSION

Plaintiffs' proposed class does not satisfy the requirements for maintaining a class action in this Court. Most importantly, there are no common issues for the Court to decide. We, therefore, respectfully request the Court to deny plaintiffs' motion for class certification.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 514-7300
Facsimile: (202) 307-0972
reginald.blades@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

JOHN NOEL
Attorney
Office of General Counsel
Department of the Navy
Washington, D.C.

April 1, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April 2005, a copy of the foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Reginald T. Blades, Jr.