# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

1. Joseph Barnes
2. Kaylene Holub
3. Socorro Yosuico

for themselves and on behalf of all others similarly situated,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA

Defendant.

Case No. 04-1335C

**PLAINTIFFS' PRE-CERTIFICATION DISCOVERY PLAN**

(Judge Allegra)

Plaintiffs allege a class consisting of non-military employees at Navy hospitals and medical facilities, employed after August 18, 1998, who were regularly scheduled to work at night and earn "premium pay" for such night work, and were not paid night "premium pay" as required by statute in two situations: (1) when on paid leave for periods of less then eight (8) hours within a pay period, and/or (2) when excused from duty on officially authorized holidays. (Complaint ¶ 9). Significantly, more than 18 months before this lawsuit was filed, the Navy admitted to this Court in the *Abrams* case that there were approximately 1,800 employees who were entitled to this back pay and that the Navy would pay them. (Attached as Exhibit B to Plaintiffs Motion to Certify Class Action is the Navy's January 24, 2003 representation to the

Court regarding the 1,800 employees entitled to back pay).[1] Moreover, the 1,800 employees that the Navy acknowledged were owed night premium back pay included only ten professional healthcare occupations (nurses, pharmacists, medical therapists, and technicians) that regularly work nights at its hospitals and medical facilities. The Navy acknowledged that it did not include all other regularly scheduled night employees in clerical support, security, food service, maintenance and other occupations (medical records, facilities workers, computer operators, etc.) at the same Navy hospitals and medical facilities. All occupations of civilian night workers at Navy hospitals and medical facilities are included in the present lawsuit. (Complaint ¶ 9.)

In their Motion to Certify Class Action, Plaintiffs (who include both professional and non-professional night employees) allege on personal review of their own pay records, and upon information and belief as to the remainder of the class, that the Navy has not made the back pay night premium payments to the 1,800 professional employees as it represented to the Court. Nor has the Navy made any back pay night premium payments to any of the non-professional employees. Plaintiffs also allege on information and belief that the Navy has not corrected the pay practice at issue, and it continues to reduce the "premium pay" of its regularly scheduled night employees in violation of the "leave with pay" statutes of Title 5, Chapter 63, 5 U.S.C. § 5545, and the holiday pay statutes 5 U.S.C. §§ 6103, 6104.

**The Navy does not deny, refute or in any way attempt to explain away its admission against interest in the *Abrams* case with respect to the approximately 1,800 professional employees. The Navy simply ignores these allegations in its opposition to Plaintiffs'**

[1] Ironically, in the *Abrams* case, the Navy's counsel on March 14, 2003 stated that another lawsuit could be initiated if the Navy failed to compensate the 1,800 other employees that it acknowledged were owed back pay. (Attached as 4th exhibit to Exhibit A to Plaintiffs' Motion to Certify Class Action is the March 14, 2003 email from the Navy's counsel in the *Abrams* case).

**motion, and it ignores the documents that Plaintiffs attached to their Motion to Certify Class Action.** Obviously, the entitlement to night premium back pay of such a large group validates the allegation that the Navy's pay practice in question is systemic and not restricted to one, or even a few, localities. Moreover, the statutes in question do not distinguish between professional employees who work at night and non-professional night workers.

As such, Plaintiffs respectfully assert that class certification with respect to occupations that regularly worked nights at Navy hospitals and medical facilities is appropriate at this time. Nonetheless, discovery that Plaintiffs request to further establish the appropriateness of class certification of the ten professional healthcare occupations as well as establish the appropriateness of class certification with respect to the other clerical and support workers who regularly work at night is set forth below.

Pursuant to the Court's May 12, 2005 Order, Plaintiffs propose the following pre-certification discovery plan.

**DEPOSITIONS:**

**Deposition(s) of Defendant's Person(s) Most Knowledgeable with respect to the following areas:**

(1) Defendant's Person(s) Most Knowledgeable at the Naval Medical Center, San Diego and Naval Hospital, Camp Pendleton with respect to: (a) the civilian employee timekeeping, payroll system and pay procedures at the two facilities; (b) the pay policies, procedures and practices with respect to the payment of night premium pay at the two facilities as part of a regularly scheduled night shift employee's pay when the employee uses accrued leave for less than eight (8) hours within a pay period and/or when the employee is excused from duty on officially designated holidays; (c) the precise location (i.e. data input, programming,

payroll system etc.) and level (i.e. local hospital or medical facility, BUMED, DEFAS etc.) of the faulty pay practices or procedures that resulted in members of the Plaintiffs' class not being paid the required night "premium pay" when they used paid leave of less than eight (8) hours within a pay period or when they were excused from duty on officially designated holidays; and (d) the occupations and classifications of professional and non-professional employees who are scheduled to work at night.[2]

(2) Defendant's Person(s) Most Knowledgeable at the Bureau of Medicine of the Department of the Navy (BUMED) and Defense Finance and Accounting Service ("DEFAS") with respect to: (a) the civilian employee timekeeping, payroll system and pay procedures at all hospitals and medical facilities operated by or for the Navy; (b) the pay policies, procedures and practices with respect to the payment of night premium pay at all such facilities as part of a regularly scheduled night shift employee's pay when the employee uses accrued leave for less than eight (8) hours within a pay period and/or when the employee is excused from duty on officially designated holidays; (c) the precise location (i.e. data input, programming, payroll system etc.) and level (i.e. local hospital or medical facility, BUMED, DEFAS etc.) of the faulty pay practices or procedures that resulted in members of the Plaintiffs' class not being paid the required night "premium pay" when they used paid leave of less than eight (8) hours within a pay period or when they were excused from duty on officially designated holidays; (d) the payment, or lack thereof, of night premium back pay to the approximately 1,800 professional employees referenced in the *Abrams* case and the process utilized for identifying employees who were entitled to night premium back pay; and (e) the procedures put in place, if any, to remedy

---

[2] The relevant time for all discovery requests is from August 18, 1998 to the present.

structural defects in the Navy's pay practices with respect to night premium pay when employees use accrued leave for less than eight (8) hours and/or when employees are excused from duty on officially designated holidays.

(3) Deposition of Dr. Chet Palmer, a statistical consultant employed by the Navy in the *Abrams* case, who has examined thousands of pay records of civilian Navy employees who were scheduled to work at night. Plaintiffs would depose Dr. Palmer with respect to the following areas: (a) the systemic applications of the Navy's payroll system with respect to night shift employees and the methodology utilized by the Navy for recording class members' time and attendance when on leave or when excused from duty on officially designated holidays; (b) the maintenance and origination of Department of the Navy payroll records; and (c) the precise location (i.e. data input, programming, payroll system etc.) and level (i.e. local hospital or medical facility, BUMED, DEFAS etc.) of the faulty pay practices or procedures that resulted in members of the Plaintiffs' class not being paid the required night "premium pay" when they used paid leave of less than eight (8) hours within a pay period or when they were excused from duty on officially designated holidays.

**Relevance of Depositions to Pre-Certification Inquiry.**

(1) The deposition of the Defendant's Person(s) Most Knowledgeable at the Naval Medical Center, San Diego and Naval Hospital, Camp Pendleton in the areas requested will establish that the Navy's payment problem with respect to its failure to pay night "premium pay" was a systemic problem at the very least at these two locations affecting the Plaintiffs and the Plaintiffs' class uniformly. Such deposition testimony will specifically include questions relating to the precise location of the Navy's faulty pay practices or procedures that resulted in the systemic failure to pay night "premium pay" as required by statute, and will establish that

common questions of law and fact exist that predominate over any individual issues and that the Plaintiffs' claims are representative of the claims of the Plaintiffs' class.

(2) and (3) Defendant's Person(s) Most Knowledgeable at BUMED and DEFAS in the areas requested and the deposition of Dr. Chet Palmer will establish that the Navy's payment problem with respect to its failure to pay night "premium pay" was a worldwide systemic problem throughout the 300 Navy hospitals and clinics affecting the Plaintiffs and the Plaintiffs' class uniformly. Such deposition testimony will include specific questions relating to the reason(s), precise location and level of the Navy's faulty pay practices or procedures that resulted in the systemic failure to pay night "premium pay" as required by statute, and will establish that common questions of law and fact exist that predominate over any individual issues and that the Plaintiffs' claims are representative of the claims of the Plaintiffs' class. Moreover, these depositions will establish the precise location and level (i.e. local hospital or medical facility, BUMED, DEFAS etc.) of the faulty pay practices or procedures in the Navy's payroll system and thus will establish the breadth of the class and its manageability.[3] The depositions will also establish that there are "leave and earnings" statements for each pay period and other documents in the possession of the Navy that can be accessed to prove the extent of damages suffered by each member of the class, regardless of job title or facility location.

---

[3] Based on the systemic payment error that occurred, Plaintiffs have reason to believe that the Navy's night premium payment problem may expand beyond its hospitals and medical facilities to all Navy civilian employees entitled to night premium pay. However, given the systemic payment error at issue, different job classifications and facility types/locations would not prohibit class certification as all such civilian employees would have suffered from the same systemic payment error.

**REQUESTS FOR ADMISSIONS:**

(1) Admit that members of the Plaintiffs' class who were regularly scheduled to work at night were not paid the required night "premium pay" when they used paid leave of less than eight (8) hours within a pay period.

(2) Admit that members of the Plaintiffs' class who were regularly scheduled to work at night were not paid the required night "premium pay" when they were excused from work on officially designated holidays.

(3) Admit that the Navy has not paid the approximately 1,800 professional employees that the Navy previously acknowledged were entitled to night premium back pay as stated in the Navy's January 24, 2003 representation to the Court (Exhibit B to Plaintiffs' Motion to Certify Class Action).

**Relevance of Requests for Admissions to Pre-Certification Inquiry.**

(1) and (2) Compelling the Navy to admit that, as a matter of law as well as fact, members of the Plaintiffs' class have not been paid the required night "premium pay" when they used paid leave of less then eight (8) hours within a pay period and when they were excused from work on officially designated holidays. This will establish that a class action should be certified to remedy the Navy's payment problem with respect to its failure to pay night "premium pay" as a systemic problem affecting the Plaintiffs and the Plaintiffs' class uniformly. As indicated above, the Navy has previously admitted that approximately 1,800 members of the Plaintiffs' class are owed back pay with respect to these pay issues. Thus, while the Navy will attempt to avoid having to make such an admission, this admission is inevitable in this case. This admission by the Navy will establish that common questions of law and fact exist that predominate over any individual issues and that the Plaintiffs' claims are representative of the

claims of the Plaintiffs' class. This admission will also go to show that the Plaintiffs' class is manageable as the admission will establish that the Plaintiffs' class suffered monetary loss involving the same factual background and legal question (failure to pay required premium pay).

(3) Compelling the Navy to admit that it has not paid the approximately 1,800 employees that the Navy previously acknowledged were entitled to back pay as stated in the Navy's January 24, 2003 representation to the Court (Exhibit B to Plaintiffs' Motion to Certify Class Action) will establish that class certification in this case serves the interests of justice. Denial of class certification will continue to enable the Navy to avoid paying each employee the "pay" which Congress mandated he or she receive and which the Navy acknowledged was due, and would avoid a multitude of suits by many of the class members. Such a result would serve the interests of justice.

**SPECIAL INTERROGATORIES:**

(1) Identify the specific faulty pay practices and procedures which resulted in members of the Plaintiffs' class not being paid the required night "premium pay" when they used paid leave of less than eight (8) hours within a pay period or when they were excused from duty on officially designated holidays.

(2) Identify the precise location (i.e. data input, programming, payroll system etc.) of the faulty pay practices or procedures that resulted in members of the Plaintiffs' class not being paid the required night "premium pay" when they used paid leave of less than eight (8) hours within a pay period or when they were excused from duty on officially designated holidays.

(3) Identify the precise level (i.e. local hospital or medical facility, BUMED, DEFAS etc.) where the faulty pay practices or procedures occurred that resulted in members of the Plaintiffs' class not being paid the required night "premium pay" when they used paid leave of

less than eight (8) hours within a pay period or when they were excused from duty on officially designated holidays.

(4) Identify the job titles or classifications of all members of the Plaintiffs' class that were not paid the required night "premium pay" when they used paid leave of less than eight (8) hours within a pay period or when they were excused from duty on officially designated holidays.

(5) Identify what, if any, steps the Navy has taken to correct the Navy's known problem of not paying "premium pay" as required by statute and as acknowledged in the Navy's January 24, 2003 representation to the Court (Exhibit B to Plaintiffs' Motion to Certify Class Action).

**DOCUMENT REQUESTS:**

(1) All "Leave and Earnings" Statements for each pay period that each of the Plaintiffs worked from August 18, 1998.[4]

(2) All "Leave and Earnings" Statements for each pay period that the approximately 1,800 professional class members referenced in the *Abrams* case worked from August 18, 1998.

(3) All documents, correspondence, emails, Orders, and official policies showing what, if any, steps the Navy has taken to correct the Navy's known problem of not paying statutorily required "premium pay" to its night shift employees when on leave for less than eight (8) hours in a pay period or when excused from duty on officially designated holidays as

[4] Plaintiffs are currently in the process of filing a second amended complaint to add 10 additional named Plaintiffs, bringing the present total of named Plaintiffs to 13. No other changes in the Complaint are being proposed. Plaintiffs have asked the Navy to stipulate to the filing of the second amended complaint, and are currently waiting for the Navy's response.

acknowledged in the Navy's January 24, 2003 representation to the Court (Exhibit B to Plaintiffs' Motion to Certify Class Action).

(4) Samples of the Plaintiffs' actual timecards and time and attendance records, and samples of computer entry documents/files and computer management instructions with respect to the civilian workforce in general, relating to the entry and processing of pay and time data when civilian employees of the Navy who are regularly scheduled to work at night use less than eight (8) hours of leave within a pay period or when they are excused from duty on officially designated holidays in order to demonstrate the Navy's actual procedure of generating and managing night premium pay for night shift employees in those situations.

**Relevance of Document Requests and Special Interrogatories to Pre-Certification Inquiry.**

The Navy's bi-weekly "Leave and Earnings" Statements for the Plaintiffs and the approximately 1,800 professional employees referenced in the *Abrams* case will contain the necessary information to establish that the Navy's payment problem with respect to its failure to pay night "premium pay" to night shift employees was a systemic problem effecting the Plaintiffs and Plaintiffs' class uniformly each time they took paid leave for periods of less than eight (8) hours within a pay period and/or when they were excused from duty on officially authorized holidays. Examples of the actual time cards and recording of time and attendance will demonstrate to the Court the systemic nature of this pay problem. Specifically, the "Leave and Earnings" Statements will establish how many hours on a bi-weekly basis the employees were regularly scheduled to work nights, and will provide the number of hours of authorized leave of less than eight (8) hours per pay period and the number of hours they were excused from duty on officially authorized holidays. These statements also will demonstrate how many hours

of night premium pay each employee was "docked" when they used accrued leave of less than eight (8) hours per pay period and when they were excused from duty on officially designated holidays. Thus, discovery of the "Leave and Earnings Statements" will not only establish liability as well as the extent of damages, but will establish that common questions of law and fact exist that predominate over any individual issues and that the Plaintiffs' claims are representative of the claims of the Plaintiffs' class.

Discovery of the "Leave and Earnings" Statements will also establish that the Plaintiffs' class is manageable as the documents requested will show that members of the Plaintiffs' class suffered monetary loss involving the same factual background and legal question (failure to pay required premium pay).

Allowing discovery of documents, or the lack thereof, that show the Navy has failed to correct its known problem of not paying "premium pay" to its employees despite the Navy's January 24, 2003 representation to the Court (Exhibit B to Plaintiffs' Motion to Certify Class Action) establishes that class certification in this case serves the interests of justice. Denial of class certification will continue to enable the Navy to avoid paying each employee the "pay" which Congress mandated he or she should receive, and would occasion the filing of a multiplicity of suits by many of the class members. Such a result would not serve the interests of justice.

The Special Interrogatories will compel the Navy to identify the precise location (i.e. data input, programming, payroll system etc.) and level (i.e. local hospital or medical facility, BUMED, DEFAS etc.) of the faulty pay practices or procedures that resulted in the Navy's failure to pay night shift employees with the statutorily mandated night premium pay when they use leave of less than eight (8) hours or are excused from duty on officially designated holidays.

Moreover, having the Navy identify with precision the job classifications of night shift workers will assist the Court in defining the scope of the class and the manageability of the class with respect to class certification inasmuch as the relevant statutory mandates apply to all civilian GS employees and do not distinguish between professional and non-professional night shift workers. Finally, disclosure of the actual steps the Navy has taken to identify the scope of the pay problem and what steps it has taken to remedy the problem, if any, will establish that the Navy has failed to pay the approximately 1,800 professional employees despite its January 24, 2003 representation to the *Abrams* court.

**CONCLUSION**

Plaintiffs respectfully request that the Court allow Plaintiffs to conduct the pre-certification discovery listed above, or that the Court grant Plaintiffs' motion for class certification of an opt-in class without the necessity of conducting pre-certification discovery, followed by Defendant's notice to the affected potential class of the option to "opt-in", and by discovery to determine the extent of individual damages.

Plaintiffs respectfully request oral argument.

Dated: June 1, 2005

s/ Robert W. Brownlie by s/Curtis R. Cotton
Robert W. Brownlie, Esq.
DLA Piper Rudnick Gray Cary US LLP
4365 Executive Drive, Suite 1100,
San Diego, CA 92121-2133
(858) 638-6886
Fax (858) 677-1401
Counsel for Plaintiffs

Of Counsel:
Curtis R. Cotton, Esq.
DLA Piper Rudnick Gray Cary US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2854
Fax (619) 699-2701