# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| 1. Joseph Barnes<br>2. Kaylene Holub<br>3. Socorro Yosuico<br><br>for themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | Case No. 04-1335C<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION**<br><br>(Judge Allegra) |

## I. INTRODUCTION

At the hearing on the motion for class certification, the Court requested further briefing on two discreet issues: (1) Would it be appropriate under Rule 23 to certify a class where the defendant has conceded liability and damages would need to be calculated for the individual class members? And, (2) Is joinder of multiple plaintiffs into a single action appropriate under this Court's rules of procedure?

As will be shown below, courts have consistently found that the resolution of liability issues in favor of a plaintiff class does not prevent class certification or the maintenance of the case as a class action. Indeed, courts have observed that such cases are perfectly suited for resolution as a class action particularly where the case involves relatively small individual damages for each class member such that it would not be economically feasible to pursue the cases individually. Moreover, it would be against the public policy supporting the use of class

actions for resolving litigation involving conduct affecting numerous similarly situated parties to allow a defendant to avoid compensating those injured parties by conceding liability.

Joinder of multiple plaintiffs in this case is appropriate under Rule 23 if this case is certified as a class action. Absent Rule 23, joinder of the individual named plaintiffs would be appropriate if the court determines that their claims arise out of the "same transaction or occurrence, or series of transactions or occurrences." *See* Rule 20(a). However, even if it were assumed joinder was improper, that fact would weigh in favor of class certification.

## II. CLASS CERTIFICATION IS APPROPRIATE EVEN WHEN LIABILITY HAS BEEN DETERMINED AGAINST THE DEFENDANT WHETHER BY ORDER OR STIPULATION.

Class actions provide important benefits to the judicial system and the class member claimants. For the judicial system, class actions avoid unnecessary waste of judicial resources that would occur as a result of a multiplicity of cases relitigating the same issues. *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Sala v. Nat'l Railroad Passenger Corporation*, Civ. A. No. 88-1572, 1988 WL 84125, 2 (E.D.Pa.Aug. 4, 1988). For the class members, the Supreme Court explained:

> The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.

*Roper*, 445 U.S. at 339. Thus, the Supreme Court has recognized that "[t]he use of the class-action procedure for litigation of individual claims may offer substantial advantages for named plaintiffs; it may motivate them to bring cases that for economic reasons might not be brought otherwise." *Id.* at 338.

Because of the important benefits afforded to the judicial system and the class members, the Supreme Court has refused to allow defendants to "pick-off" class action plaintiffs by conceding liability or offering entry of judgment for the individual class plaintiff. *Id.* at 340.

In *Roper*, the Court specifically addressed a situation where a defendant attempted to forestall the appeal of a decision denying class certification by depositing into the registry of the court, the full amount that the individual, named class plaintiffs could recover based on their claims against the defendant. *Id.* at 329-330. The named plaintiff rejected the tender, but the district court nevertheless dismissed the case as moot. *Id.* at 330. The Fifth Circuit reversed the district court decision and the Supreme Court affirmed, explaining:

> Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions, moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

*Id.* at 339. At the same time, the Supreme Court recognized that "[i]t would be in the interests of a class-action defendant to forestall any appeal of denial of class certification if that could be accomplished by tendering the individual damages claimed by the named plaintiffs." *Id.* In affirming the Fifth Circuit decision, the Supreme Court prevented defendants from so easily avoiding potential classwide liability.

*Roper* has been extended to prevent a defendant from using an offer of judgment under Fed. R. Civ. P. 68 to pick-off named class representatives before they can move for class certification as an attempt to avoid facing a class action. *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004). In *Weiss*, the court explained: "As in *Roper*, allowing the defendants here to 'pick off' a representative plaintiff with an offer of judgment less than two months after the

complaint is filed may undercut the viability of the class action procedure, and frustrate the objectives of this procedural mechanism for aggregating small claims . . ." *Id.* at 344.

If a defendant cannot forestall class certification by conceding liability to a representative plaintiff, a defendant certainly cannot do so by conceding liability to the entire class. This is shown by decisions that have consistently allowed cases to proceed as class actions after liability was determined against the defendant. *See, e.g.*, *Owner-Operator Independent Drivers Ass'n, Inc. v. Arctic Express, Inc.,* 288 F. Supp. 2d 895 (S.D. Ohio 2003) (motion to decertify denied; although damages remained the sole issue to be adjudicated, class certification was still appropriate); *Lopez v. Orlor, Inc.,* 176 F.R.D. 35 (D.Conn.,1997) (class successfully moved for summary adjudication with respect to liability; despite defendants' objections, court continued to certify class with respect to both liability and damages); *Brown v. Pro Football, Inc.,* 146 F.R.D. 1 (D.D.C. 1992); *Sala*, *supra* at 4.

In *Sala*, defendant Amtrak brought a motion for reconsideration of an order certifying the case as a class action because it had conceded liability as to compensatory damages arising out of the derailment of one of its trains. *Sala*, *supra* at 1. Amtrak argued that because liability had been conceded, the plaintiff could no longer satisfy the predominance and superiority requirements imposed by Federal Rule of Civil Procedure 23(b)(3) for the maintenance of her class action. *Id.* The court disagreed, holding that Amtrak's concession as to liability reinforced the court's initial determination that common questions of law or fact existed. *Id.* The court, recognizing that class actions often facilitate the public policy of settlement of claims, also held that continuing to certify the class "should advance the settlement of compensatory damage claims of members of the class." *Id.* The court further held that continuing to certify the class achieved judicial economy "by preventing the proliferation of fifty or more duplicative lawsuits"

and eliminated "the likelihood that some passengers with relatively small claims may not bring individual lawsuits due to the high costs involved." *Id.* at 2. For these reasons, the court reaffirmed its prior class certification order, despite Amtrak's concession of liability.

Similarly, several other district courts have continued to certify a class after a plaintiff has successfully moved for summary judgment with respect to liability. For example, in *Brown v. Pro Football, Inc.,* 146 F.R.D. 1 (D.D.C. 1992), a group of football players successfully sought class certification with respect to their antitrust lawsuit against the Washington Redskins based on the Redskins' imposition of salary restraints. *Id.* at 2. Following class certification, the players successfully moved for partial summary judgment with respect to the issue of the Redskins' liability. *Id.* Following the court's granting of partial summary judgment to the plaintiffs, the Redskins sought to decertify the class on the basis that the only issue left was the individualized issue of damages. *Id.* at 2-3. The court denied the Redskins' motion to decertify, holding that although the common question of liability had already been decided against the Redskins, common issues remained that would justify class action status. *Id.* The court first held that the issue of the Redskins' breach of antitrust laws was still relevant to the jury's determination of damages. *Id.* at 3. The court further held that common issues of fact remained between members of the class, in that each signed a similar contract to play with the Redskins. *Id.* Finally, the Court held that there was a common method of proof of damages, and that a "reasonable approximation of damages is achievable through a common formula." *Id.*[1] For

[1] The court specifically rejected defendant's argument that variations in individual class member employment contracts raised individual issues of law and fact. *Id.* at 3. The court held that "there is the common method of proof of damages." *Id.* The court explained that "differences among players [contracts] are largely irrelevant and do not preclude class certification" because "the plaintiffs' method of proof [of damages] is formulaic . . . therefore, the individual qualities [of the play contracts] have no practical effect." *Id.* at 3-4.

these reasons, the court refused to decertify the class on the basis that each individual may have a different amount of damages owed to him. *Id.* at 3; *accord Owner-Operator Independent Drivers Ass'n, Inc. v. Arctic Express, Inc., supra*; *Lopez v. Orlor, Inc., supra.*[2]

A recent Court of Federal Claims case, *Christensen v. United States,* ___ Fed. Cl. ____, 2005 WL 1201428 (Fed. Cl. May 18, 2005) also illustrates that denial of a motion to certify a class should *not* be the automatic result of a defendant conceding liability. There, a class of Air Force officers who were selected for involuntary retirement brought a lawsuit against the United States, alleging that the government used discriminatory criteria in selecting individuals for retirement. *Id.* at 1. The United States conceded liability, and subsequently, the parties reached a class-wide settlement and jointly moved the Court to approve the proposed agreement, which the Court did approve. *Id.* The result of the *Christensen* lawsuit exemplifies what the court in *Sala, supra,* discussed with respect to the effect of a defendant's concession of liability – that such a concession often spurs the parties into effectuating a just and reasonable settlement.

Here, the Navy has not yet conceded liability. However, even if the Navy concedes liability, as the authorities above suggest, the common questions of law and fact relating to liability still exist and predominate over the only individual issue – the computation of damages. *Christensen, et al. v. United States,* No. 00-355C, 49 Fed. Cl. 165, 167 (2001) ("factual issues affecting each individual member of the class and their assigned category are diminutive when

---

[2] Except in the rare case in which the damage suffered by each class member is identical, virtually every successful class action will reach a point where liability is resolved against the defendant leaving as the remaining issue the calculation of each individual class member's damages. *See Brown, supra* at 4 ("It is rare that any two class action plaintiffs are identically-situated, have received identical injuries, and deserve identical damages. More often, plaintiffs have common injuries from a common source, and the jury must determine the exact amount of each's individual damages.") Thus, "'[i]t is settled that individual issues of fact will invariably be present, and that that fact will not preclude a class action.'" *Id.* (*quoting* H. Newburg, 3 *Newburg on Class Actions* §18.07 (2d Ed 1985).

compared to the overriding legal issues involved"); *Favreau, II v. United States*, 48 Fed. Cl. 774, 779 (2000) (factual differences "would not appear to be relevant to the court's resolution of the common legal issues . . . If the plaintiffs fail in that regard, in other words, no other issues should remain. The third *Quinalt* factor is satisfied"); *Christian II v. United States,* 46 Fed. Cl. 793, 817 (2000). As the court held in *Moore v. United States,* 41 Fed. Cl. 394, 399 (1998), "the computation of damages, although necessarily individualized, should be relatively formulaic." *See also Hannon v. United States*, 31 Fed. Cl. 98, 103 (1994) ("Moreover, if liability is found, and quantification of . . . damages remains the sole issue which requires a separate determination in each case, class certification should not be ruled out") (cited with approval in *Moore*).

In addition, treating the case as a class would facilitate the public policy of settlement of claims and would undoubtedly advance the likelihood of a class-wide settlement being reached between the parties. Class treatment would also achieve judicial economy by preventing the multiplicity of suits and eliminates the likelihood that some class members with relatively small claims will not bring individual lawsuits due to the costs of filing such a lawsuit.

Here, the Navy has known for more than two years that it failed to provide the required "night premium pay" to its civilian employees that regularly worked nights at its hospital and medical facilities when such employees used paid leave of less than eight hours in a pay period and/or when such employees were excused from work on official holidays. Despite this knowledge, and its representation to this Court in January 2003 that 1,800 payments of backpay would be made, the Navy has failed to correct the pay practices at issue, and has failed to make the promised payments to its employees. Denial of class certification will continue to enable the Navy to avoid paying each employee the "pay" which Congress mandated he or she receive and

will occasion the filing of a multiplicity of suits by many, but not all, of the class members. These circumstances establish a strong case for opt-in class certification.

## III. JOINDER IS PROPER WITH RESPECT TO THE EXISTING THREE PLAINTIFFS AND THE ADDITIONAL TEN PROPOSED PLAINTIFFS UNDER RULE 23.

The First and Second Amended Complaints are both filed as class action complaints for money damages under Rule 23. Rule 23(a) specifically provides that "[o]ne or more members of a class may sue . . . as representative parties on behalf of all . . ." Accordingly, pursuant to Rule 23, the three existing Plaintiffs and the proposed ten additional Plaintiffs are properly joined as named Plaintiffs in the First and Second Amended Complaints.[3]

To the extent the Court is inquiring as to whether the joinder of the Plaintiffs is proper if this case was not certified as a class action, the question of whether there would be proper joinder of the Plaintiffs would be controlled by Rule 20(a), which pertains to permissive joinder. Rule 20(a) provides that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."

Thus, Rule 20(a) imposes two separate requirements for joinder: (1) a right to relief must be asserted by, or against, each plaintiff or defendant, relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences and (2) some questions of law or fact common to all the parties will arise in the action. The second requirement, the common question test, is easily satisfied in the present situation. The Navy's systematic practice of failing

---

[3] Rule 19, relating to joinder of parties needed for just adjudication, also contains a specific exception for class action cases filed under Rule 23. *See* Rule 19(d).

to pay the named Plaintiffs and the Plaintiff class their regularly scheduled "night premium pay" pursuant to the Title 5 statutory requirements satisfy the common question test.

The first requirement of Rule 20(a), the so-called transactional test, requires that a right to relief relate to or arise out of the "same transaction or occurrence, or series of transactions or occurrences." Here, whether each individually named Plaintiff's and proposed Plantiff's rights to back pay stem from the "same transaction or occurrence, or series of transactions or occurrences" depends on whether the Navy's failure to pay the required premium pay to each and every class member is viewed as a "series of transactions or occurrences" within the meaning of Rule 20(a). If it is, joinder is clearly proper.

In *Franconia Associates v. United States,* 61 Fed. Cl. 335 (2004), this Court specifically addressed the "transactional test" to determine whether joinder was appropriate under Rule 20(a). There, this Court observed under the comparable rule, "[c]ourts, in particular, have rejected the notion that 'same transaction or occurrence requirement' may be construed to allow joinder of parties having only 'similar claims,' for example breach of contract claims based on the same form contract." *Id.* at 336. Under this analysis, in the absence of Rule 23, it would appear that permissive joinder may not be proper.

However, this case was filed under Rule 23, which does allow one or more plaintiffs to bring a claim. Moreover, if permissive joinder is not available, such a result would serve to reinforce the conclusion that class certification is not only appropriate, but necessary in this case.

/////

/////

/////

/////

## IV. CONCLUSION

As shown above, the resolution of liability issues by motion or concession does not prevent class certification or require class decertification. To the contrary, courts have uniformly recognized that such cases are particularly suited for resolution as a class action from the standpoint of judicial economy and justice to the class members and, where, as here, the individual damages are relatively small, a class action may be the only practical means of adjudication.

Moreover, on its face, Rule 23(a) allows one or more members of a class to sue. To the extent joinder may not be allowed under Rule 20(a), such a result would only further compel the conclusion that this case must be certified as a class action to avoid either a wasteful multiplicity of suits that could administratively overwhelm the court or result in a lack of a practical legal remedy for wrongful conduct that the defendant has all but acknowledged because individual suits are not economically feasible.

For these reasons, and the reasons set forth in the prior brief and at oral argument, Plaintiffs respectfully request that their motion for class certification be granted.

Dated: July 18, 2005

s/ Robert W. Brownlie by s/Curtis R. Cotton

Robert W. Brownlie, Esq.
DLA Piper Rudnick Gray Cary US LLP
4365 Executive Drive, Suite 1100,
San Diego, CA 92121-2133
(858) 638-6886
Fax (858) 677-1401
Counsel for Plaintiffs

Of Counsel:
Curtis R. Cotton, Esq.
DLA Piper Rudnick Gray Cary US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2854
Fax (619) 699-2701