# In The United States Court of Federal Claims

No. 04-1335 C

(Filed: November 3, 2005)

| | | |
|---|---|---|
| JOSEPH BARNES, KAYLENE HOLUB, SOCORRO YOSUICO, Plaintiffs, v. THE UNITED STATES, Defendant. | * * * * * * * * * * * | Motion to certify class under RCFC 23; Civilian pay case involving claims for premium pay; Proper role of *Quinault* factors in construing RCFC 23; Proposed class analyzed in terms of the RCFC 23 requirements of numerosity, commonality, typicality, adequacy, and superiority; Class certified. |

**ORDER**

*Robert W. Brownlie,* DLA Piper Rudnick Gray Cary US LLP, San Diego, CA, for plaintiffs.

*Reginald Thomas Blades, Jr.,* United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Peter D. Keisler*, for defendant.

**ALLEGRA, Judge:**

Pending before the court, after briefing and oral argument, is plaintiffs' motion to certify a class action under RCFC 23. For the reasons that follow, this court grants plaintiffs' motion.

I.

Briefly, plaintiffs are civilian employees of the Department of the Navy (the Navy) – Joseph Barnes is a member of the facility staff; Kaylene Holub is a computer operator; and Socorro Yosuico is a clinical nurse. The Navy pays plaintiffs and certain other employees premium pay for working nights and weekends, or holidays, on a regular basis. *See* 5 U.S.C. §§ 5545, 5546. Plaintiffs, however, allegedly have not received that pay when taking annual, sick or other paid leave of less than eight (8) hours within a pay period or when excused from duty on officially designated holidays. The case law suggests that the United States may be liable for this pay. *See Lanehart v. Horner*, 818 F.2d 1574 (Fed. Cir. 1987) ("leave with pay" statutes

prohibit reducing federal employees' compensation when they are excused from duty for annual leave and sick leave); *see also Abrams v. United States*, 57 Fed. Cl. 439 (2003).

On August 18, 2004, plaintiffs filed their original class action complaint for money damages, which was amended on November 16, 2004. Defendant filed its answer on December 16, 2004. On March 10, 2005, plaintiffs filed a motion to certify a proposed opt-in plaintiff class, to which defendant responded, in opposition, on April 1, 2005. Plaintiffs filed a motion to further amend their complaint on June 16, 2005, seeking to name additional plaintiffs. On June 28, 2005, the court heard oral argument on the pending motions. By order that same day, the court directed each party to file a memorandum indicating whether joinder was proper with respect to the existing and additional proposed plaintiffs, and whether class certification may be sought when a defendant has declined to contest liability. The parties filed their supplemental briefs responding to the court's order on July 18, 2005.

Plaintiffs assert that the "pool of potential class members consists of approximately 5,000 present and former employees of the Navy who regularly work or worked at night [in] a hospital or medical facility operated by or for the Navy." According to their motion, and, in particular, the description of the class therein, potential additional members include registered nurses, nurse anesthetists, licensed practical or vocational nurses, physician assistants, nurse's assistants, dental assistants, pharmacists, certified or registered respiratory therapists, licensed physical therapists, occupational therapists, rehabilitation therapy assistants, technicians, nuclear medicine technicians, medical instrument technicians, medical clerks, facility staff, housekeeping staff, information systems clerks and managers, computer operators, warehouse staff, quality assurance staff, and all other civilian personnel who regularly were or are scheduled to work between the hours of 6 p.m. and 6 a.m. at a hospital or medical facility operated by or for the Navy (including, but not limited to, security, food service and maintenance personnel). Plaintiffs contend that, like them, the class members have systematically been deprived of premium pay by the Navy when taking leave of less than eight (8) hours within a pay period or being excused from duty on certain holidays.

II.

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). Rule 23 of the Rules of the Court of Federal Claims (RCFC), as revised May 1, 2002, provides as follows regarding the certification of class actions:

> **(a) Prerequisites to a Class Action**. One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the

claims of the class, and (4) the representatives will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable**. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: **(1)** the United States has acted or refused to act on grounds generally applicable to the class; and **(2)** the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of a class action.

The requirements of RCFC 23(a) and (b) can be grouped into five categories: (i) **numerosity** – a class so large that joinder is impracticable; (ii) **commonality** – in terms of the presence of common questions of law or fact, the predominance of those questions, and the treatment received by the class members at the hands of the United States; (iii) **typicality** – that the named parties' claims are typic of the class; (iv) **adequacy** – relating to fair representation; and (v) **superiority** – that a class action is the fairest and most efficient way to resolve a given set of controversies.[1] These requirements are in the conjunctive; hence, a failure to satisfy any one of them is fatal to class certification. *See Testwuide v. United States*, 56 Fed. Cl. 755, 761 (2003); *see also Falcon*, 457 U.S. at 161 (making this observation as to the Federal rule).

By way of guidance, the Committee Notes accompanying RCFC 23 indicate that, "[i]n the main," the rule adopts the criteria for certifying and maintaining a class action set forth in *Quinault Allottee Ass'n v. United States,* 453 F.2d 1272 (Ct. Cl. 1972). *See* Rules Committee Note to revised RCFC 23; *Testwuide*, 56 Fed. Cl. at 761. In *Quinault,* 453 F.2d at 1276, the Court of Claims permitted use of a class action to hear the claims of approximately 1,000 Quinault Indian allottees. Because it lacked a formal rule on the subject, the court enunciated a multi-factored test for class certification, *to wit*: (i) the class must be large, but manageable; (ii) there must be a question of law common to the whole class; (iii) the common question of law must predominate over any separate factual issues affecting individual class members; (iv) the claims of named plaintiffs must be typical of the class; (v) the United States must have acted on grounds generally applicable to the whole class; (vi) the claims of many allottees must be so

---

[1] Similar, although not identical, groupings have been employed by courts analyzing Rule 23 of the Federal Rules of Civil Procedure. *See O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000). Owing to the fact that the language of RCFC 23 and Federal Rule 23 is, in many regards, identical, this opinion relies upon numerous decisions that have construed the relevant portions of the latter rule.

small that it is doubtful they would otherwise be pursued; (vii) the current plaintiffs must adequately and fairly protect the interests of the class without conflicts of interest; (viii) the prosecution of individual lawsuits must create a risk of inconsistent or varying adjudications. *Id*. Consistent with the Committee Notes, various opinions view these factors as informing the prerequisites for class certification under RCFC 23. *See, e.g., Christopher Village, LP v. United States*, 360 F.3d 1319, 1324 (Fed. Cir. 2004). But, care must be taken lest the parallel to *Quinault* be carried too far, as the Committee Notes also indicate that the provisions of RCFC 23 are "modeled largely on the comparable [federal rule]." A careful comparison reveals that in some instances, RCFC 23 implicates factors not found in *Quinault*, *e.g.*, whether "joinder of all members is impracticable," while in others, *Quinault* imposes conditions not found in RCFC 23, *e.g.*, that there must be a common legal questions that joins the class. Where there is direct conflict between the *Quinault* factors and the prerequisites identified in this court's rules, the latter must control. *See* RCFC 83(a).[2]

It remains to apply the requirements of RCFC 23, as properly amplified by *Quinault*, to the facts in this case. Plaintiffs bear the burden of establishing that the action satisfies these requirements. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). For this purpose, the court must assume the truth of the factual assertions contained in the complaint. *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 405-06 (1977).

First, as to numerosity, every indication is that the class in question, which, according to plaintiffs, potentially numbers in the thousands, is so numerous that "joinder of all members is impracticable." RCFC 20(a) imposes two separate requirements on such joinder: (i) a right to relief must be asserted by, or against, each plaintiff or defendant, relating to or arising out of the same transaction or occurrence, and (ii) some question of law or fact common to all the parties will arise in the action. "Both of these requirements must be satisfied in order to sustain joinder under RCFC 20(a)," this court has stated, for "if one or the other is not met, the parties are improperly joined." *Franconia Assocs. v. United States*, 61 Fed. Cl. 335, 336 (2004); *see also Rochester Gas & Elec. Corp. v. United States*, 65 Fed. Cl. 431, 442 (2005); 7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure (hereinafter Wright, Miller & Kane) § 1653, at 403-08 (citing numerous cases construing the comparable Federal rule). In the case *sub judice*, plaintiffs claims, as well as those of the putative class, do not meet the transactional test of RCFC 20(a), which requires that the right to relief arise out of the "same" transaction or occurrence. "Same" in this regard does not mean "similar." *Franconia*, 61 Fed. Cl. at 337 ("well-known canons of construction suggest that the term 'same' must be construed

[2] "On points of substantive law, Court of Claims precedent is controlling, binding authority in our cases," this court has stated, but "Court of Claims decisions regarding its rules of procedure are not binding upon this court in the interpretation of our rules promulgated under our own statutory authorization, 28 U.S.C. § 2503(b) (construed in conjunction with 28 U.S.C. § 2071(a),(b),(d) & (e))." *U.S. PolyCon Corp. v. United States*, 43 Fed. Cl. 11, 13 (Fed. Cl. 1999); *see also Plaintiffs in All Winstar-Related Cases at the Court v. United States*, 44 Fed. Cl. 3, 10 n.7 (1999).

consistently [in this court's rules], with the result that the term in the latter rule cannot mean 'similar.'"). Accordingly, while under RCFC 23(a)(1) joinder need only be impracticable, not impossible, *see Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), the latter is the case here.[3] As such, RCFC 23(a)(1) is fully satisfied in this case.[4]

Regarding commonality, RCFC 23(a)(2) requires that there be questions of fact or law common to the class, while RCFC 23(b)(2) provides that those questions must "predominate" over questions affecting only individual members. In determining whether these twin requirements are met, the court must, where necessary, look beyond the pleadings, and seek to develop an understanding of the relevant claims, defenses, facts and substantive law. *See Falcon*, 457 U.S. at 160; *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)). "Such an understanding prevents the class from degenerating into a series of individual trials." *O'Sullivan*, 319 F.3d at 738. Nonetheless, commonality does not require that the individual class members be identically situated.[5] Rather, to meet RCFC 23(a)(2), the questions underlying the claims of the class merely must share essential characteristics, so that their resolution will advance the overall case. *See Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397-98 (6th Cir. 1998). Under RCFC 23(b)(2), the class-wide issues must also "predominate," a condition that occurs "if resolution of some of the legal or factual

---

[3] In its supplemental filing, defendant asserts that if joinder cannot be accomplished under RCFC 20, then a class action should not be certified under RCFC 23. This assertion was made *sans* citation, perhaps because it would turn the requirement of RCFC 23(a)(1) on its head. Further discussion of this *non sequitur* is unwarranted.

[4] Several cases hold that another aspect of the numerosity requirement is that there be a legally definable class that can be ascertained through reasonable effort. *See Simer v. Rios*, 661 F.2d 655, 669-71 (7th Cir. 1981); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995). Such concerns, however, generally have been raised only in the context of so-called "opt out" class actions, in which the stakes of not contacting a class member are high. In other contexts, concerns that an overly narrow class might "fail[] to include a substantial number of persons with claims similar to those of the class members" have led courts to conclude that "[a] broader class definition . . . might be more appropriate." *See* Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* (hereinafter *Managing Class Action Litigation*), at 7 (Federal Judicial Center 2005). As an aside, the fact that plaintiffs do not know the exact number of class members does not preclude the granting of class status. *See, e.g., In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D. Mich. 1985) ("[t]he numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure").

[5] *In re Community Bank of N. Virginia*, 418 F.3d 277, 303 (3d Cir. 2005); *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982); 7A Wright, Miller & Kane § 1763 ("this provision does not require that all the questions of law and fact raised by the dispute be common; nor does it establish any quantitative or qualitative test").

questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also Blades v. Monsanto Co.*, 400 F.3d 562, 566-67 (8th Cir. 2005). Of the commonality requirements, the Supreme Court has indicated that the predominance component is "far more demanding" and is designed to determine whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623-24; *see also Blades*, 400 F.3d at 566.

Despite defendant's arguments to the contrary, there are common questions of law and fact here sufficient to satisfy RCFC 23(a)(2). The most basic of these involve whether the Navy has systematically failed to pay the specified individuals premium pay for leave of less than eight hours per pay period or certain holidays in violation of various statutes, among them 5 U.S.C. § 5545.[6] That, as defendant stresses, the putative class members represent a relatively diverse range of jobs and are geographically dispersed does not alter the commonality calculus because, at its core, this lawsuit "challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *see also Pendleton v. Schlesinger*, 73 F.R.D. 506, 509 (D.D.C. 1977), *aff'd*, 628 F.2d 102 (D.C. Cir. 1980) (difference in employment histories of the plaintiffs, *e.g.*, that one was a chemist, another a janitor and another a technician, no obstacle to class certification). In the words of RCFC 23(b)(1), as presaged in *Quinault*, this thus appears to be a case in which a nonfrivolous allegation has been made that "the United States has acted or refused to act on grounds generally applicable to the class."[7] And because the assertion is that the Navy's failure to comply with the Federal pay statutes is systematic and long-standing, that issue plainly is more substantial than – and thus

---

[6] Multiple common questions are involved here. Nonetheless, the language of Rule 23(a)(1) of the Federal Rules of Civil Procedure, which, like RCFC 23, uses the plural "questions," has been construed to require only that there be ***one*** common question of law or fact. *See, e.g., In re Am. Medical Sys. Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996); *In re Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3.10, at 3-47 (3d ed. 1992) (citing additional cases). In many ways, any debate over the number of the word "question" has an artificial quality, as the distinction between what are multiple questions, on the one hand, and subdivisions of a single question, on the other, is hypertechnical, at best.

[7] In its opposition, defendant, at points, seems to oppose class certification by contesting the merits of plaintiffs' complaint. But, such is not a proper focus at this nascent stage of the proceedings. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) (there is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"); *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996) (*Eisen* "stand[s] for the unremarkable proposition that the strength of a plaintiff's claim should not affect the certification decision.").

predominates over – the relatively straightforward calculation issues associated with determining the hours and amounts of premium pay to which each putative class member may be entitled.

Defendant certainly has not shown otherwise. Its principal thrust is that commonality is lacking because the Navy agrees that employees covered by the statutes cited by plaintiffs should receive premium pay in the general circumstances alleged. Yet, this budding concession, the exact contours of which remain unmapped, fails to cut the ground from beneath plaintiffs' motion for several reasons. For one thing, despite defendant's claims, the allegation remains that, for some unexplained reason, the Navy allegedly has systematically failed to provide premium pay as required by the relevant statutes. Defendant's concession deepens the mystery shrouding this alleged failure; it neither reveals nor eliminates it. Second, the case law suggests that a defendant may not thwart class certification by making tactical concessions designed to pare down the list of common issues held by putative class members. *See Amchem Prods.*, 521 U.S. at 622-23 (proper predominance inquiry "trains on the legal or factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement"). Were the law otherwise, there could not be class certifications solely for settlement purposes, a relatively common scenario under Federal Rule 23.[8] Moreover, it bears emphasis that defendant's concession will be binding, if at all, only in favor of the actual plaintiffs in this case – defendant has no ability to "concede" a legal issue that applies to the thousands of individuals that are not yet before this or any other court. *Compare* 28 U.S.C. §§ 516, 519.[9] Indeed, it appears that, early

[8] According to the Manual on Complex Litigation, "[p]arties frequently settle before the judge has decided whether to certify a class." Manual on Complex Litigation, *supra*, at § 21.132; *see also Amchem Prods.*, 521 U.S. at 618 ("[a]mong current applications of Rule 23(b)(3), the 'settlement only' class has become a stock device"). Under *Amchem Prods.*, 521 U.S. at 619-20, the requirements of Federal Rule 23(a) and (b) apply equally to certifying a class action for settlement, except that the court need not consider whether the case, if tried, would present intractacable management problems. Various cases make clear that in applying these requirements, the commonality of issues is analyzed without regard to what has been resolved in the settlement. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 309 (3d Cir. 1998).

[9] In asserting that its concessions takes the wind from plaintiffs' sails, defendant heavily relies on *Gaffney v. United States*, 834 F. Supp. 1 (D.D.C. 1993), in which the district court refused to certify a class action for Federal employees claiming premium pay. In *Gaffney*, the district court found that certification of an opt-out class action was improper because the "single common question" of law – the Federal employees' entitlement to premium pay – had been resolved by the Federal Circuit; the remaining factual issues only affected individual members; and the "notification and opt-out procedures are likely to be extremely difficult to manage." *Id.* at 6. Moreover, the court held that certifying a class to protect against "'non-acquiescence,' *i.e.*, the government's failure to apply a holding government-wide, does not find support in the literal language of [Federal] Rule 23(b)(1)(A)." *Id.* Concerns, however, that the United States will not follow an adverse decision of this court and continue to litigate similar cases certainly are

in 2003, in *Abrams v. United States*, 57 Fed. Cl. 439 (2003), defendant made a similar concession regarding the premium pay owed to 1,800 Navy employees, asserting that failure to make premium payments may have been attributable to "data-entry" problems. Yet, when push came to shove, it appears that only the 39 named employees received the benefit of the later settlement in that case, leaving most of the 1,800 employees referenced in defendant's filings in *Abrams* to be among the potential members of the class for which plaintiffs seek certification here. Based on these events, this court will not ignore the apparent commonality of the issues presented here based upon an expedient concession that defendant might revoke at any time and that, if history is any guide, might never be applied administratively to the putative members of the class.

Like the commonality requirement, typicality does not require the representative parties' claims to be identical to those of the putative class members. *See Bazemore v. Friday*, 478 U.S. 385, 405-06 (1986); *In re Community Bank of N. Va.*, 418 F.3d at 303. Indeed, the analysis of commonality and typicality tends to merge because "[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13; *see also Cooper*, 390 F.3d at 713. The representative party demonstrates typicality when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc*., 960 F.2d 285, 291 (2d Cir. 1992); *see also Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). "A necessary consequence of the typicality requirement," one court has observed, "is that the representatives' interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *American Medical Sys*., 75 F.3d at 1082; *see also Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1022-23 (11th Cir. 1996).

In the case *sub judice*, the claims of the named plaintiffs appear to be typical of those in the described class. The only distinctions raised by defendant in this regard are inconsequential. For example, contrary to defendant's claims, the fact that, of necessity, there will be individualized damage determinations here does not preclude granting plaintiffs' motion.[10] Were

---

relevant under RCFC 23(b), particularly, in cases involving small claims, and, especially, where a systematic deprivation of pay is alleged. Moreover, it is conceivable that the court in *Gaffney* would have ruled differently if it had been faced, in a case involving an opt-in class, with a claim that the government's failure to pay premium has continued despite the results reached in *Lanehart* and *Abrams*.

[10] *See, e.g., In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 139 (2d Cir. 2001) (common issues may predominate "even when there are some individualized damage issues"); *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985) (same); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("the mere fact that questions peculiar to each individual member of the class remain

such considerations determinative, there scarcely would be a case that would qualify for class status in this court or any other – certainly, none of the class actions for product liability and mass torts commonly certified in the district courts, in which the nature and magnitude of damages vary dramatically, would pass muster.[11] *Per contra*. As noted by Judge Frankel in his well-known commentary on Civil Rule 23, "it is assumed that individual questions peculiar to individual class members, but overweighed by the common questions, will or may remain after the common questions have been finally determined." Marvin E. Frankel, "Some Preliminary Observations Concerning Civil Rule 23," 43 F.R.D. 39, 43 (1967). In fact, consistent with the practice under the Federal Rules, if necessary, this court could later either create subclasses of individuals who were subject to particular payroll systems, or even order separate trials on the issue of damages.[12] And while defendant stresses that each class member individually would have to prove his or her damages with particularity, it is noteworthy that this court has employed damage estimations in other cases, and conceivably could employ similar principles here. *See generally*, *Franconia Assocs. v. United States*, 61 Fed. Cl. 718, 770 & n.93 (2004) (discussing the jury verdict method of establishing damages); *Health Ins. Plan of Greater N.Y. v. United States*, 62 Fed. Cl. 33, 43-47 (2004) (extrapolating damages derived from samples of computer data).

---

after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible"); *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 269-70 (E.D. Mich. 2001), *aff'd*, 383 F.3d 495 (6th Cir. 2004) (great variance in damages did not preclude class certification); *see also* 7A Wright, Miller & Kane, § 1764.

[11] Such product liability and mass tort cases have proceeded as class actions even though the variations in damages were potentially far greater than what might be expected here. *Sterling*, 855 F.2d at 1197 ("No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action."); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 649 (C.D. Cal. 1996) ("In addition, it is clear that – notwithstanding defendant's arguments – it is not necessary that all class members suffer the same exact injury as the class representative."); *In re Asbestos Sch. Litig.*, 104 F.R.D. 422, 430 (E.D. Pa. 1984), *as amended*, 107 F.R.D. 215 (E.D. Pa. 1985), *aff'd, in part, rev'd, in part, on other grounds*, 789 F.2d 996 (3d Cir. 1986), *cert. denied*, 479 U.S. 852 (1986) ("the harm suffered by the named plaintiffs may differ in degree from that suffered by other members of the class so long as the harm suffered is of the same type"); *see also In re Three Mile Island Litigation*, 87 F.R.D. 433, 439 (M.D. Pa. 1980); 7A Wright, Miller & Kane § 1763 & n.25.

[12] *See Managing Class Action Litigation*, *supra*, at 7 (discussing subclasses); Federal Judicial Center, Manual for Complex Litigation §§ 21.23, 21.24 (4th ed. 2004) (discussing subclasses and issue classes); 5 James Wm. Moore et al., Moore's Federal Practice § 23.45[2][a] (3d ed. 2005) ("[I]f common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied, even if individual damages issues remain, . . . [C]ourts often bifurcate trials into liability and damages phases, severing common liability questions from individual damages issues.").

The penultimate requirement of RCFC 23, found in RCFC 23(a)(4), relates to the adequacy of representation. In making this evaluation, the court first must consider whether class counsel is "qualified, experienced and generally able to conduct the litigation." *In re Drexel Burnham Lambert*, 960 F.2d at 291 (internal quotation omitted). Second, "the class members must not have interests that are 'antagonistic' to one another," *id.*, "serv[ing] to uncover conflicts of interest between named parties and the class they seek to represent," *Amchem Prods.*, 521 U.S. at 594; *see also E. Tex. Motor Freight Sys.,* 431 U.S. at 405; *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). There does not appear to be any serious question regarding either prong of this analysis here. As to the adequacy of counsel, plaintiffs note that their lead attorney has considerable expertise in handling class actions both before this court and in other fora, an assertion that is not challenged here. Nor is there any serious claim that the plaintiffs in this action have interests that are antagonistic to those of the class. Accordingly, this court finds that this requirement is also met.

Finally, the Advisory Committee to the Federal Rules has suggested that the superiority requirement is met where "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23 advisory committee's note (1966 amendment, subdivision (b)(3)); *see also Amchem Prods.*, 521 U.S. at 615; *Gunnells v. Healthplan Svcs., Inc.*, 348 F.3d 417, 468 (4th Cir. 2003); Frankel, *supra*, at 43. Like its federal rule counterpart, RCFC 23(b) provides a nonexhaustive list of factors pertinent to the superiority criterion (*e.g.*, "the difficulties likely to be encountered in the management of a class action"), while other factors relating to this issue spring from *Quinault* (*e.g.*, whether the prosecution of individual lawsuits would create a risk of inconsistent or varying adjudications). Essentially, under this prong of the analysis, the court is obliged to conduct a cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action. *See Eisen*, 417 U.S. at 163-64; 7AA Wright, Miller & Kane, *supra*, at § 1780, p. 197-98.

Here, that cost/benefit analysis tips decidedly in favor of class certification, as there are many reasons why a class action would appear to be the fairest and most efficient way to adjudicate the controversies in question. First, as identified in *Quinault,* the small recoveries expected to be received by these individuals – estimated to be individually in the hundreds of dollars – render it less likely that, without the benefit of class representation, they would be willing to incur the financial costs and hardships of separate litigations, the costs of which would certainly exceed their recoveries many-fold.[13] In short, without a class action, these individuals

---

[13] *See Amchem Prods.*, 521 U.S. at 617 ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights") (internal quotations omitted); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual

may well be unable to vindicate their rights. Second, the court does not foresee any insurmountable difficulties in managing the proposed class. Indeed, while defendant asserts that this court has rarely granted class action status in employment cases, other courts, in analogous circumstances, have readily certified such classes, including cases involving Federal workers filing under the so-called Little Tucker Act.[14] Conversely, prosecution of individual lawsuits here undoubtedly would create a risk of inconsistent or varying adjudications. While some benefits undoubtedly are derived from the percolation that occurs when more than one judge of this court considers a particular legal issue, particularly where the plaintiffs exhibit a desire to prosecute their own actions, that value is outweighed by the prospect of having hundreds or more of relatively small-dollar lawsuits sprinkled across this court's dockets. Notably, under this court's rules, there is no way, other than a class action, to ensure the consolidation of cases before a single judge that do not qualify as directly-related cases under RCFC 40.2(a)(1), as would be the case here. *See Franconia*, 61 Fed. Cl. at 337. Accordingly, it would appear that, in the case *sub judice*, a class action would, in the words of the Advisory Committee, "achieve economies of time, effort, and expense."

For its part, defendant asserts that the proposed class is unmanageable, but rests its claim primarily on speculation. For example, without explaining why, it asserts that difficulties may be

---

suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device"); *Robidoux*, 987 F.2d at 936 (court should consider the financial resources of class members, as well as their ability to institute individual suits); *see also* 7AA Wright, Miller & Kane, *supra* at §1777.

[14] These cases have rejected the notion that class certification is inappropriate because the court must ultimately determine how many hours of overtime individual employees worked, at least where the methodology employed for determining those hours is similar or identical. *See, e.g., O'Meara v. United States*, 59 F.R.D. 560, 564-69 (N.D. Ill. 1973) (military reservists could maintain "Little Tucker Act" class action seeking backpay); *Rothgeb v. Statts*, 56 F.R.D. 559, 563-65 (S.D. Ohio 1972) (Federal IRS agents could maintain "Little Tucker Act" class action seeking overtime pay); *see also, e.g., Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 183-84 (W.D.N.Y. 2005) (finding commonality despite differences among plaintiff employees relating to amount of unpaid overtime due); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y. 2004) (same); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 157-58 (S.D.N.Y. 2002) (certification of class action under Rule 23(b)(3) recommended for case involving unpaid overtime despite necessity of individualized damage calculations); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (in class action for minimum wage and overtime violations, individual differences relating to damages did not defeat commonality); *Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527, 529-31 (W.D. Pa. 1994) (class action maintainable by retired employees for dismissal pay, severance pay and vacation pay); *Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 664-65 (D. Minn. 1991) (class action for, *inter alia*, overtime violations); *see also Doe v. United States*, 47 Fed. Cl. 594 (2000); *cf. Buchan v. United States*, 27 Fed. Cl. 222 (1992).

encountered in identifying the potential members of the class, which includes active and retired Navy employees, and in having them actually join this litigation. These type of concerns, however, are hardly unique to this case and plainly are of less moment where, as here, an agency undoubtedly possesses records from which to identify the addresses of its current employees and many of its past employees, including those who are retired. In addressing notice and joinder problems far more complex than this, the district courts have developed and refined notification procedures, particularly under Rule 23(b)(3) of the Federal Rules. *See, e.g., In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 327 n.11 (3d Cir. 2001) (listing recommended practices for dealing with class notification ); Manual for Complex Litigation, *supra*, at § 21.31 (discussing acceptable notice practices); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d at 306 (adequate notice provided to 8 million potential class participants). There is no indication whatsoever that such procedures would not work well here. And it states the obvious to say that a court should not shy away from a class action simply because it will require more effort than an ordinary individual case. *See* 7AA Wright, Miller & Kane § 1780, p. 199 ("In no event should the court use the possibility of becoming involved with the administration of a complex lawsuit as a justification for evading the responsibilities imposed by Rule 23.").

Nor is the court the least bit dissuaded from certifying a class here based on defendant's invocation of cases that have indicated that class actions are "generally disfavored" or "disfavored" in this court. *See, e.g., Christopher Village v. United* States, 50 Fed. Cl. 635, 642 (2001); *Berkley v. United States*, 45 Fed. Cl. 224, 227-28 (1999); *Buchan*, 27 Fed. Cl. at 223; *O'Hanlon v. United States*, 7 Cl. Ct. 204, 206 (1985). Research reveals the quoted language to be a full-fledged shibboleth, and, as is generally true of legal fictions, there are hosts of problems with this often-reiterated, but little-analyzed, proposition.

First, the simple truth is that there never was much real support for the assertion that class actions are "disfavored." Several decisions purport to find such support in various Court of Claims' opinions, *see, e.g., O'Hanlon*, 7 Cl. Ct. at 206. But one searches, in vain, for that evidence. Among the cases most often cited are *Quinault*, in which the court, after all, certified a class despite lacking any formal rule on the subject; *Crone v. United States*, 538 F.2d 875, 884 (Ct. Cl. 1976), in which the court denied a class applying the "most liberal of rules or criteria;" and *Clincher v. United States*, 499 F.2d 1250, 1252 (Ct. Cl. 1974), *cert. denied*, 420 U.S. 991 (1975), in which the court, still laboring without a formal class action rule, spent no more than a paragraph applying the *Quinault* factors, without mentioning who it was favoring. None of these cases even hint at the notion that class actions are disfavored. To be sure, a review of the judicial scorecard certainly suggests that this court has been reluctant to certify classes (query, what unpublished decisions would reveal). But, that hardly provides a basis for converting what is properly only a historical observation, *i.e.*, granting classes ***has been*** disfavored, into a self-fulfilling, prescriptive rule of law, *i.e.*, that granting classes ***is*** disfavored. Any notion that the latter principle is compelled by sovereign immunity, *see, e.g., Buchan*, 27 Fed. Cl. at 225; *Saunooke v. United States*, 8 Cl. Ct. 327, 329 (1985), flies in the face of Supreme Court precedents that consistently have held that where, as here, a waiver plainly is available, the use of

a particular procedural mechanism does not implicate that doctrine.[15] Accordingly, this court manifestly was correct in *Taylor v. United States*, 41 Fed. Cl. 440, 444 (1998), when it stated that "there appears to be no basis for stating that class actions are 'generally disfavored' and should be used only in 'rare and extraordinary cases.'"[16]

If the proposition that class actions are "disfavored" ever was valid, it certainly is no longer so now. Prior to 2002, this court's rules provided no direct guidance as to how to analyze a potential class certification – but that obviously is no longer the case. And, with the notable exception of *Christopher Village*, all the published opinions cited for the proposition that class actions are "disfavored" predate the 2002 promulgation of the new RCFC 23, a rule closely patterned on Rule 23 of the Federal Rules of Civil Procedure. The latter rule is not of recent coinage, with the relevant parts having been promulgated in 1966.[17] This court's 2002 rule modification is entitled to a construction that will accomplish its aim, namely to bring this court's procedure, at least for opt-in class actions, more closely in line with the well-established procedures employed by district courts. The continued "disfavoring" of class actions would not

---

[15] *See, e.g., Scarborough v. Principi*, 541 U.S. 401, 419-23 (2004) ("[o]nce Congress waives sovereign immunity," Fed. R. Civ. P. 15(c) applied to government as if it were a private person); *Franconia Assocs. v. United States*, 536 U.S. 129, 145 (2002) (once Congress waives sovereign immunity, civil procedure rules "should generally apply to the Government 'in the same way that' they apply to private parties.") (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)); *United States v. Yellow Cab Co.*, 340 U.S. 543, 553-54 (1951) (use of impleader provision did not implicate sovereign immunity considerations); *see also United States v. Hristov*, 396 F.3d 1044, 1047 (9th Cir. 2005); *cf. United States v. Sherwood*, 312 U.S. 584, 589-92 (1941) (joinder of individual parties with the United States in district court action not authorized by the Tucker Act's waiver of sovereign immunity). One cannot help but be reminded of Judge Cardozo's oft-quoted statement in *Anderson v. John L. Hayes Constr. Co.*, 243 N.Y. 140, 147, 153 N.E. 28, 29-30 (1926): "The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced."

[16] Other cases intimate that class actions involving civilian pay disputes are "disfavored" because they threaten the "ongoing legal relationship" Federal employees have with their employer, the United States. *Armitage v. United States*, 18 Cl. Ct. 310, 315 (1989). But, it is for Congress, and not this court, to weigh such considerations. And even if such concerns were relevant, the proposition that the maintenance of a healthy employment relationship is threatened more by a class action than hundreds or thousands of individual lawsuits is, at best, dubious – unless, of course, one assumes, *sub silentio*, that the individual lawsuits will never be brought.

[17] *See generally,* 7A Wright, Miller & Kane § 1754 ("Because of the fundamental revision of Rule 23 in 1966, many early decisions that focused on the jural relationship among the members of the class or dealt with matters now expressly covered by the rule no longer are authoritative.").

only threaten this objective, but also put this court at odds with the vast majority of cases in other circuits that have held that the comparably-worded Federal rule should be liberally construed – or, at least, not narrowly construed – in support of class certification.[18] Indeed, assuming *arguendo*, the "disfavor" proposition has a shred of validity – which it does not – one would be hard-pressed to translate it into any discernible limitation on how the current RCFC 23 should be construed, particularly given the decades of authority construing the comparable language of the Federal rule. This last point carries particular force if one decides, as some cases do, to talk in terms of class actions being "generally" disfavored. This begs the question, of course, whether a particular case is – or is not – governed by the "general" rule, which question may be answered only by applying the requirements that directly spring from the rule. The latter is what this court has done here. Certainly, that route is preferable to perpetuating a nonexistent dichotomy between what is "generally disfavored" and what is specifically permitted.

III.

Based upon the foregoing, the court hereby determines that this case may be maintained as a class action. The plaintiff class shall consist of persons who meet the following requirements:

1. Non-military employees of the Department of the Navy who were or are employed after August 18, 1998 (six years prior to the filing of the original complaint in this matter);

2. who worked "nightwork" as defined by 5 U.S.C. § 5545(a) ("regularly scheduled work between the hours of 6:00 p.m. and 6:00 a.m.") or § 5545(b) (allowing time adjustments for facilities

---

[18] For a mere sprinkling of these cases, *see*, *e.g.*, *Gunnells v. Healthplan Svcs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) ("[F]ederal courts should give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application. . . ." (internal quotations deleted)); *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) ("'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility. . . .'" (quoting *Sharif ex rel. Salahuddin v. New York State Educ. Dep't.*, 127 F.R.D. 84, 87 (S.D.N.Y. 1989))); *Scott v. University of Delaware*, 601 F.2d 76, 92 (3d Cir.), *cert denied* 444 U.S. 931 (1979) ("The practice has been for courts to construe the requirements of Rule 23 liberally. . . .") (Adams, J., concurring); *King v. Kansas City Southern Indus., Inc.*, 519 F.2d 20, 25-26 (7th Cir. 1975) ("Rule 23 must be liberally interpreted . . . . Its policy is to favor maintenance of class actions."); *Schneider v. Electric Auto-Lite Co.*, 456 F.2d 366, 370 (6th Cir. 1972) ("the District Court was correct in liberally interpreting Rule 23 in order to avoid burdensome litigation and to give efficient disposition to this action."); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2d Cir. 1968) ("the . . . rule should be given a liberal rather than a restrictive interpretation"); *see also* Alba Conte & Herbert B. Newberg, 2 Newberg on Class Actions §5:57 (4th ed. 2002).

outside the United States) at a hospital or medical facility operated by or for the Department of the Navy;

3. whose premium pay for "nightwork" pursuant to 5 U.S.C. § 5545 was unpaid for "periods of leave with pay during these hours" of less than eight (8) hours within a pay period; and/pr

4. whose "pay" for officially authorized holidays under 5 U.S.C. §§ 6103 and 6104 was not "the same pay for that day as for a day on which an ordinary day's work is performed" because it did not include the "nightwork" premium pay for "periods of absence with pay during these hours due to holidays" pursuant to 5 U.S.C. § 5545.

5. Included (where they qualify under the foregoing provisions requirements) are registered nurses, nurse anesthetists, licensed practical or vocational nurses, physician assistants, nurse's assistants, dental assistants, pharmacists, certified or registered respiratory therapists, licensed physical therapists, occupational therapists, rehabilitation therapy assistants, technicians, nuclear medicine technicians, medical instrument technicians, medical clerks, facility staff, housekeeping staff, information systems clerks and managers, computer operators, warehouse staff, quality assurance staff, and all other civilian personnel including, but not limited to, security, food service and maintenance personnel.

On or before November 30, 2005, the parties shall file a joint status report indicating how this case should proceed, including a proposed course for meeting the notice requirements of RCFC 23(c).

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge