# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| 1. Joseph Barnes<br>2. Kaylene Holub<br>3. Socorro Yosuico<br><br>for themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | Case No. 04-1335C<br><br>(Judge Allegra) |

## JOINT STATUS REPORT

Pursuant to the Court's January 24, 2006 Order, the parties respectfully submit the following joint status report regarding how the case should proceed at this point, including a proposed course for meeting the notice requirements of RCFC 23(c). Although the parties have been unable to agree upon all issues, this status report provides the Court with an account of the parties' efforts and statements of their respective positions.

Because the parties have been unable to agree upon all issues, Plaintiffs propose that the Court conduct a status conference to discuss the disputed issues and/or that the Court set a schedule for the submission of briefs. Although Defendant, of course, does not have any objection to the Court conducting a status conference, the issues should not be resolved at a status conference, and the parties should submit briefs upon the issues that are impeding the parties' progress.

**Identification of Class Members**

The parties have agreed that the best approach to identify the potential class members is to identify by name and last known home address all civilian employees at Navy medical facilities who, at anytime since April 18, 1998, received some amount of "premium pay" for working at night. Defendant has represented to Plaintiffs that it believes that the task of identifying potential class members can be accomplished by performing the following procedures. From its electronic pay databases, the Defense Finance and Accounting Service (DFAS) will generate lists of all civilian employees of the Navy Bureau of Medicine and Surgery (BUMED) who, at any time from August 18, 1998 to the present, have received any night differential premium pay or night shift work pay. The lists will contain the following information for each individual listed: name; last four digits of the individual's social security number; a unit identification code (UIC) identifying the location of the responsible employing facility; a submitting office number (SON) identifying the servicing personnel office; and, a code identifying whether the individual received night differential premium pay (ND) or night shift work pay (ZJ). Defendant will provide Plaintiffs with the UIC codes for all Navy medical facilities, including facility name and location, and with the SON codes, including office locations.

The DFAS will generate a list for the most recent 26 pay periods ("current year-to-date") and separate lists for each prior year. For the current year-to-date list, the DFAS will also generate a separate list that provides a home address for each employee listed. For all prior years, the BUMED will request from its various individual facilities the most recent home address contained within the facility's files for each employee. To the extent addresses are not available for each employee in the facility's files, the parties will confer regarding the best

alternative method for identifying the most recent home address for each employee. For any listed employee for whom an address is needed and who can be identified as having retired from Federal service, Defendant will request the Office of Personnel Management (OPM), which issues monthly retirement benefits, to provide a home address.

Before the lists can be provided to Plaintiffs, a protective order from the Court will need to be in place to cover the protected information that will be contained in the lists. The parties will file with the Court a proposed protective order.

DFAS estimates that for the work it would perform the cost will be $7,000. The cost for the work that would be performed by the BUMED or any other government agency in identifying employees' addresses has not yet been estimated, but is expected to exceed the cost for the DFAS work because it will be much more time consuming and labor intensive. The DFAS can begin its work once it has received payment for its services (the DFAS functions by being paid by its various client agencies to perform the work requested.)

The parties disagree as to who should pay the cost of identifying the potential class members. Plaintiffs respectfully propose that a status conference be held with the Court within the next fourteen days to discuss this issue. Alternatively, Plaintiffs request that each party file with the Court a brief upon this issue on or before March 17, 2006. As stated above, defendant does not object to a status conference, and respectfully requests that this matter be handled by the submission of briefs.

The DFAS and the BUMED estimate that their work related to the identification process as described above can be completed within 90 days after commencement of the process. The parties do not know the number of individuals for whom addresses may need to be found through some other means, or how long finding the addresses will take. The parties, therefore, are unable

at this time to determine how long it will take to complete the identification of potential class members. To the extent the above deadline will not be met and an extension of time is necessary, the parties will bring this matter to the attention of the Court as soon as possible.

**Defendant's Position on the Parties' Efforts To Date**

Defendant has worked cooperatively with Plaintiffs to develop a mutually acceptable method to accomplish the identification in accord with the approach agreed upon by the parties. The parties chose the agreed-upon method described above because the only way to identify the actual class members as identified by the Court would be to examine manually all of the pay records for each pay period for every individual who has worked at a Naval medical facility since August 18, 1998. Defendant has made available to plaintiffs responsible and knowledgeable individuals from DFAS and the BUMED to discuss how best to identify potential class members. Plaintiffs, however, have participated in only one of these conference calls. Further, Defendant has, more than once and to no avail, asked plaintiffs to provide some pay record evidence that the three named Plaintiffs have not been paid correctly. This information would be of immense assistance in determining how the pay records should be examined to identify potential class members because, if any of the employees have, in fact, been paid incorrectly, the pay record information would provide insight into why the employee may have been incorrectly paid. Plaintiffs, however, apparently do not possess any evidence that any of the three named Plaintiffs have been paid incorrectly.

Moreover, Plaintiffs do not want to commit in advance to a method for identifying potential class members but propose that Defendant perform all of the work and absorb all of the cost, and then, Plaintiffs will conduct discovery to determine whether the results are acceptable to them and whether there might be a better way. Because this is an arduous, time consuming,

labor intensive, and costly task, defendant is unable to agree to plaintiffs' approach of defendant doing all of this work and absorbing all of the expense only to have plaintiffs investigate through discovery whether there might be a better way. Defendant respectfully proposes that the approach to identifying potential class members should be agreed upon prior to engaging in the necessary work and that any follow-on discovery be limited to specifically identified deficiencies in the identification of potential class members that could not be resolved cooperatively. Further, to facilitate the process, defendant respectfully requests that plaintiffs be required to provide, or to admit that they do not possess, pay record evidence that the three named plaintiffs have not been paid correctly when they have been scheduled to work at night and have taken leave for less than eight hours in a pay period or have not worked because of a holiday.

**Plaintiffs' Rebuttal to Defendant's Position on the Parties Efforts To Date**

Plaintiffs have worked cooperatively with Defendant to develop a mutually acceptable method to accomplish the identification in accord with the approach agreed upon by the parties. To that end, Plaintiffs' counsel participated with Defendant in a conference call with Navy accounting individuals in December 2005. After that meeting, the parties agreed that the best approach to identifying the potential class members was the approach agreed to above, which was originally proposed by Defendant. Thereafter, Plaintiffs asked Defendant to obtain, from its internal agencies (DFAS and BUMED), the precise information that could be gathered on each potential class member as well as how long that process would take. Plaintiffs at all times remained available to participate on conference calls with Defendant, but no additional calls were scheduled or deemed necessary with respect to the identification process that the parties have agreed to. The parties have also participated in a number of other conference calls with each other to discuss the numerous other issues in this status report.

Next, after a conference call between parties in December 2005, Defendant's counsel requested records that were mentioned by Plaintiffs' counsel that relate to the pay issue at hand. This is the only record request made by Defendant to date. Thereafter, Plaintiffs' counsel informed Defendant's counsel that the documents being referred to were the Navy's own records in the *Abrams* case, which included the declaration of Dr. Chet Palmer, Defendant's back pay computation expert in the *Abrams* case. In addition, Defendant has copies of the payroll records for its own employees, including the three named plaintiffs, the ten additional plaintiffs included in the proposed amended complaint, and the 1,800 employees that Defendant has already acknowledged are owed nightwork back pay. Plaintiffs will be requesting these payroll records from Defendant in merits discovery.

With respect to the identification related discovery issue, Defendant has represented to Plaintiffs that it believes the method described above will identify all potential class members. The identification discovery proposed by Plaintiffs is solely for the purpose of ensuring that all potential class members are actually identified pursuant to the method agreed upon by the parties.

**Plaintiffs' Discovery Related to Identification of Class Members**

Plaintiffs propose that from the completion of the identification process and for the following 90 days, Plaintiffs will have the ability to engage in focused discovery to ensure that all potential class members have been adequately identified. During this period, Defendant will make person(s) available for deposition (including RCFC 30(b)(6) depositions) and will respond to written discovery as soon as possible. Prior to engaging in any formal discovery upon this issue, the parties will work together informally in an attempt to ensure that all potential class members have been adequately identified.

If a dispute arises with respect to the adequacy of the identification of class members, Plaintiffs will file a motion with the Court within 30 days after the 90 day discovery period ends. To the extent Plaintiffs are unable to meet the 90 day discovery deadline and need to request an extension of time, Plaintiffs will bring this matter to the attention of the Court as soon as possible.

As stated above, Defendant respectfully proposes that the approach to identifying potential class members should be agreed upon prior to engaging in the necessary work and that any follow-on discovery be limited to specifically identified deficiencies in the identification of potential class members that could not be resolved cooperatively. Further, to facilitate the process, defendant respectfully requests that plaintiffs be required to provide, or to admit that they do not possess, pay record evidence that the three named plaintiffs have not been paid correctly when they have been scheduled to work at night and have taken leave for less than eight hours in a pay period or have not worked because of a holiday.

**Content of Individual Notice To Class Members**

Between February 17, 2006 and April 28, 2006, the parties will meet and confer in an attempt to agree upon the content of the class notice. To the extent the parties are not able to agree upon the content of the class notice, each party will submit briefing on the issue to the Court by May 17, 2006 to resolve the issue.

**Providing Individual Notice To Class Members and Class Notice Period**

If there is no dispute as to the adequacy of the identification of the potential class members, an individual class notice will be mailed to each potential class member identified within 30 days after the identification discovery period ends. If there is a dispute as to the adequacy of the identification of the potential class members, the individual class notice will be

mailed to each potential class member identified within 30 days after the Court resolves the issue. Each potential class member will have 120 days after individual notice is mailed to opt-in to the class.

For potential class members whose individual notice is returned as undeliverable, Defendant, within 30 days, shall provide Plaintiffs with the individual's full social security number, and Plaintiffs will then have 45 days to obtain an updated address for each such potential class member. An additional notice will be mailed to each such potential class member within 15 days of receiving the updated address. These potential class members will have 120 days after the additional notice is mailed to opt-in to the class.

The parties disagree as to who should pay for the cost of preparing and mailing the individual class notice to each potential class member, and respectfully propose that they address this issue in the status conference and/or briefs that they have proposed above.

**Plaintiffs' Merits Discovery**

Plaintiffs propose that from February 17, 2006 until November 30, 2006, Plaintiffs will engage in merits discovery (including RCFC 30(b)(6) depositions). On or before March 10, 2006, Plaintiffs will serve their first set of written discovery, which will include document requests with respect to DFAS' program specifications, and the underlying merits-specific computer code itself, as to payments of night premium pay. Plaintiff's initial discovery (written discovery and depositions) will include discovery related to the 1,800 employees (as referenced by this Court in its Opinion) that Defendant has already acknowledged were owed nightwork back pay (Defendant's January 24, 2003 representation to the Court in the *Abrams* matter). Such merits discovery as to the systemic nature of Defendant's pay practices at issue in this case will

include the deposition of Dr. Chet Palmer who reviewed thousands of relevant payroll records for Defendant as a back pay computational expert in the *Abrams* case.

Defendant respectfully proposes that the parties conduct merits discovery from February 17, 2006 through August 18, 2006. Defendant reserves all rights to object to Plaintiffs' discovery requests, and Defendant anticipates that it will object to some of Plaintiffs' discovery requests.

**Expert Discovery**

Plaintiffs propose that the parties will designate expert witnesses on January 31, 2007. Any supplemental expert witnesses will be designated on February 15, 2007. Expert discovery will take place from February 1, 2007 through March 31, 2007.

Defendant is not currently aware of any reason why expert testimony might be necessary to determine the factual question of whether an employee has been paid correctly. In any event, Defendant proposes that the parties shall exchange initial expert reports within 60 days following the close of merits fact discovery; rebuttal expert reports, if any, shall be exchanged within 30 days following service of the initial expert reports; and, deposition of any expert submitting a report may be taken within 60 days following the exchange of rebuttal expert reports.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Robert W. Brownlie
ROBERT W. BROWNLIE
DLA Piper Rudnick Gray Cary US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone: (619) 699-2854
Facsimile: (619) 699-2701

Of Counsel:

CURTIS R. COTTON
DLA Piper Rudnick Gray Cary US LLP
San Diego, CA

IRA M. LECHNER
Escondido, CA

Attorneys for Plaintiffs

DATED: February 17, 2006

s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 514-7300
Facsimile: (202) 307-0972
reginald.blades@usdoj.gov

Of Counsel:

JOHN NOEL
Attorney
Office of General Counsel
Department of the Navy
Washington, D.C.

Attorneys for Defendant

Date: February 17, 2006

CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February, 2006, a copy of the foregoing "JOINT STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Robert W. Brownlie