# In The United States Court of Federal Claims

No. 04-1335C

(Filed: July 17, 2006)

| | | |
|---|---|---|
| JOSEPH BARNES,<br>KAYLENE HOLUB,<br>SOCORRO YOSUICO,<br>on behalf of themselves and all<br>other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | * | Class action; Notice requirement of RCFC 23(c); Cost of providing notice to potential class members; *Eisen*; Assigning identification task to defendant based on efficiency and economy; Allocation of cost; *Oppenheimer Fund, Inc. v. Sanders*; Substantiality of cost; Failure by defendant to provide detailed cost estimate; DFAS "activity based costing"; Burden of demonstrating substantiality of identification costs; Identification costs to be borne by defendant. |

## ORDER

On November 3, 2005, this court granted plaintiffs' motion to certify a class in this civilian pay case. *See Barnes v. United States*, 68 Fed. Cl. 492 (2005). On February 17, 2006, the parties filed a joint status report indicating that they were unable to agree on a proposal for meeting the notice requirements of Rule 23(c) of the Rules of the United States Court of Federal Claims (RCFC).[1] On March 3, 2006, the court ordered the parties to file simultaneous memoranda on the issue of who should bear the cost of identifying the potential class members, which memoranda were filed on March 15, 2006. At a joint status conference on March 20, 2006, the parties discussed their respective positions. The next day, the court issued an order directing defendant to file a cost estimate for identifying potential class members. On April 7, 2006, defendant filed a status report in response to that order. After reviewing that status report, the discussion at the joint status conference, and the initial memoranda and various other documents filed in this case, the court hereby orders defendant to bear the cost of producing the list of potential class members.

[1] Like its federal counterpart, RCFC 23(c)(2) requires that "[f]or any class certified . . . the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Generally in a class action lawsuit, a representative plaintiff is expected to bear the cost of notice to the class as part of the "burden of financing his own suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178-79 (1974); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 357 (1978). While "ordinarily there is no warrant for shifting the cost of the representative plaintiff's performance of these tasks to the defendant," the court, in its discretion, may order a defendant to "perform one of the tasks necessary to send notice, such as identification," where the defendant can do so with greater efficiency or less expense than the plaintiff. *Sanders,* 437 U.S. at 350, 354-56; *see also S. Ute Indian Tribe v. Amoco Prod. Co.*, 2 F.3d 1023, 1029 (10th Cir. 1993); Alba Conte and Herbert B. Newberg, 7 Newberg on Class Actions (hereinafter "Newberg") § 22:86 (4th ed. 2006).[2] If the court renders such an order, it "must exercise its discretion in deciding whether to leave the cost of complying with its order where it falls, on the defendant, or place it on the party that benefits, the representative plaintiff." *Sanders*, 437 U.S. at 358.

In such situations, the defendant's costs of performing identification tasks normally are shifted to the representative plaintiffs.[3] *Id.* There are, however, limited exceptions to this general rule, under which a court may, at its discretion, decline to shift the costs of identification. This may occur, for example, where the defendant has already performed or will perform the task in the ordinary course of its business. *Id.* at 359; *see also S. Ute Indian Tribe*, 2 F.3d at 1029-31 ("Defendants performed [the collection of names and addresses] prior to this litigation and had to do so to operate their . . . businesses.").[4] Or it may occur where the expense involved is "so insubstantial as not to warrant the effort required to calculate it and shift it to the representative plaintiff." *Sanders*, 437 U.S. at 359; *see also Wolfchild v. United States*, 68 Fed. Cl. 779, 798 n.27 (2005); 7 Newberg, *supra*, at § 8:8. In establishing the latter exception, *Sanders* drew an analogy to Federal Rule of Civil Procedure 26(c), which allows cost shifting in certain cases of discovery, stating –

---

[2] Paralleling the Federal rules, the court's power to require a defendant's cooperation in effectuating notice stems from RCFC 23(d) – "the court may make appropriate orders: . . . (2) requiring . . . that notice be given in such manner as the court may direct to some or all of the members" in the action.

[3] Plaintiffs contend that they are entitled to the list of putative plaintiffs at defendant's expense under this court's discovery rules. However the rules governing the discovery of information under RCFC 26 do not apply in this context, as the names and addresses are being sought for purposes of notification in a class action, not as "relevant to the subject matter involved in the pending action." *See Sanders*, 437 U.S. at 350-55 (discussion in analogous setting involving the Federal rules).

[4] In *Sanders*, 437 U.S. at 359 n.28, the Court gave the following example – "Thus, where defendants have been directed to enclose class notices in their own periodic mailings and the additional expense has not been substantial, representative plaintiffs have not been required to reimburse the defendants for envelopes or postage."

> Once again, a rough analogy might usefully be drawn to practice under the discovery rules. Under those rules, the presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from "undue burden or expense" in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery. The analogy necessarily is imperfect, however, because in the Rule 23(d) context, the defendant's own case rarely will be advanced by his having performed the tasks. Thus, one of the reasons for declining to shift costs under Rule 26(c) usually will be absent in the Rule 23(d) context. For this reason, a district court exercising its discretion under Rule 23(d) should be considerably more ready to place the cost of the defendant's performing an ordered task on the representative plaintiff, who derives the benefit, than under Rule 26(c). In the usual case, the test should be whether the expense is substantial, rather than, as under Rule 26(c), whether it is "undue."

*Id*. at 358-59 (footnote omitted). While the Court did not purport to define all of the circumstances in which a "court might be justified in placing the expense on the defendant," it cautioned that "courts must not stray too far from the principle underlying [*Eisen*] that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action." *Sanders*, 437 U.S. at 359.

In the case *sub judice*, it is beyond peradventure that, because defendant is in sole possession of the relevant employment records, it can identify potential class members "with less difficulty or expense than could the representative plaintiff[s]." *Sanders*, 437 U.S. at 356. Indeed, it is uniquely positioned to do so. In similar circumstances, other courts have required the identification task to be performed by a defendant. *See Barahona-Gomez v. Reno,* 167 F.3d 1228, 1236-37 (9th Cir. 1999), *opinion supplemented*, 236 F.3d 1115 (9th Cir. 2001) (shifting identification responsibility to defendant based upon its available records); *Marriott v. Cty. of Montgomery*, 228 F.R.D. 133, 134 (N.D.N.Y. 2005) ("Where, as here, defendants are in sole possession of the information about prospective class members, it is appropriate that defendants either provide the notice or cooperate with the plaintiffs by providing the information necessary to provide the notice."); *Cty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1477, 1484 (E.D.N.Y. 1989)*, aff'd, in part, rev'd, in part, on other grounds*, 907 F.2d 1295 (2d Cir. 1990) ("In this case it was obviously much less costly and more convenient to have [the defendant] mail notice to its almost one million customers through its computerized billing lists."); *Enter. Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 328 (S.D.N.Y. 1980) (requiring defendant to produce lists of current and past shareholders). As defendant does not seriously contest this point, the court will render a similar order here.

But what does this entail? Defendant sketchily has stated that the identification of putative class members can be broken down into three groups of employees. For individuals employed within the most recent 26 pay periods (current-year), defendant has access to electronic records maintained by the Defense Finance and Accounting Service (DFAS) which can provide

information including names, addresses and the last four digits of social security numbers. For prior years, dating back to 1999, defendant claims that "separate retrieval programs must be written," as the database structure has changed over the years, and CDs containing each year's data exist in different formats. In addition, it notes that the electronic records from these years do not contain addresses and further research is required to obtain a current address. Finally, defendant reports that data from 1998 predate the DFAS data repository and will need to be retrieved from the actual tape storage medium. These data apparently also do not contain addresses. In the joint status report filed February 17, 2006, defendant stated that the cost estimate for querying the electronic records of the DFAS would be $7,000. No estimate of costs for the additional work required to obtain addresses for employees not part of the current-year period was provided, but defendant indicated that it "is expected to exceed the cost for the DFAS work."

At the status conference held on March 20, 2006, the court indicated that it expected defendant to work with the DFAS to provide "very detailed cost components of their figure, and not just their normal hourly rate." In this regard, the court explained that the "internal charging process is irrelevant," and that it "want[ed] to know what the actual costs are." In particular, recognizing that some of the costs could be "employee driven," the court indicated that it would like to see "an estimate of hours and the pay rates of the people involved." More broadly, it asked for a "breakdown by component" of the "different tasks involved" in obtaining the required information for the various periods in suit in order to "gauge the reasonableness of the estimates." Concluding, the court stated – "DFAS better be able to give you very detailed cost components of their figure and not just their normal hourly rate," because "if they come back to me with some sort of generic quote that I [cannot] get beneath . . . that [is] probably going to result in the cost being imposed upon the agency."[5] In response, government counsel indicated that he would request from the "agencies an accurate realistic detailed breakdown of the costs for producing the list that has been suggested." On March 21, 2006, the court memorialized its instructions in an order that required defendant to provide a "detailed cost estimate for identifying the potential class members."

In response to this order, on April 7, 2006, defendant filed a short status report in which it indicated, in relevant part, that –

> The cost to provide the information that can be retrieved from the DFAS electronic records is $8,373.47, which is based upon 109.5 hours times $76.47 per hour. The rate is established by the Office of the Secretary of Defense ("OSD") upon a yearly basis in connection with working capital funds as part of program budgeting. <u>See</u> 10 U.S.C. § 2208 (authorizing Secretary of Defense to establish working capital funds); 31 U.S.C. § 9701(b) (authorizing agency heads to

---

[5] At the hearing, the court also offered defendant the option of releasing the raw data to plaintiffs and allowing them to sort through the information. It does not appear this option has been pursued.

> prescribe regulations establishing the charge for a service or thing of value provided by the agency); 32 C.F.R. § 204.1 (implementing the Department of Defense program under 31 U.S.C. § 9701 and OMB Circular A-25). The rate is the rate established for Information Services Direct Billable Hours in Program Budget Decision (PBD) 426 (December 27, 2004), setting rates for fiscal years 2006 and 2007. The direct and indirect costs considered in establishing rates are described in the attached OSD Comptroller iCenter document, entitled "Core Elements Of DWCF [Defense Working Capital Funds] Rate Setting, Full Cost Recovery And The Setting Of Rates" (available at http://www.dod.mil/comptroller/icenter/dwcf/ratesetting.htm).

The materials referenced in this passage do not provide any further breakouts of the salaries or other expenses involved with providing the various data retrieval services at issue. Rather, the webpage listed suggests that the hourly rate of $76.47 is set using "activity-based costing," a form of accounting that is designed to recoup the overall cost of running the DFAS. *See* http://www.dod.mil/comptroller/icenter/learn/abcosting.htm (as viewed on July 14, 2006); http://www.dod.mil/comptroller/icenter/dwcf/costvisibility.htm (as viewed on July 14, 2006). *Inter alia*, that rate not only covers general depreciation and overhead expenses, but is designed potentially to recoup "losses of prior years" incurred by the DFAS.[6] *Id*. ("[h]igher prices" may reflect "any prior year losses"); http://www.dod.mil/comptroller/icenter/dwcf/ratesetting.htm (as viewed on July 14, 2006).

Defendant's April 7, 2006, status report comports with neither the court's expressed expectations nor, more importantly, the legal requirements upon which those expectations were based. For one thing, any correlation between the composite hourly rate cited by defendant and the actual costs it will incur in performing the retrieval would be a mere coincidence. More

---

[6] Emphasizing this, one page on this website explains –

> Should a Business Area record a positive or negative Net Operating Result, DoD revolving fund policy requires the prior year operating gains or losses to be returned or recovered through customer rates changes set during the budget review. Profits from prior year operations are returned to customers through decreased rates; losses are recouped through increased rates. A surcharge is imposed on customer bills to recoup losses. The amount of losses to be recouped is determined at the first budget execution review meeting of the fiscal year. Additional adjustments are determined during the mid-year review as needed. Customers are required to absorb or finance all cost increases.

http://www.dod.mil/comptroller/icenter/dwcf/ratesetting.htm (as viewed on July 14, 2006). Another page on the website cited by defendant indicates that the rates are set to cause the revolving fund to "break even over the long-term." *See* http://www.dod.mil/comptroller/icenter/dwcf/revolvingfund.htm (as viewed on July 14, 2006).

likely, applying that rate would pass on to plaintiffs costs wholly unrelated to the tasks at hand, perhaps including losses that occurred at the DFAS in a prior year. While undoubtedly such losses, as well as overhead and depreciation, might, from an accounting or institutional standpoint, appropriately be spread among Department of Defense components, it does not follow that those same costs should be imposed on outside parties in a situation such as this. Indeed, defendant would have this court charge plaintiffs the same hourly rate whether the actual work performed is done by a GS-14 systems expert or a GS-5 staff assistant – again, a *non sequitur*. The use of a composite hourly rate that builds in unrelated costs clashes not only with the Supreme Court's general jurisprudence on cost shifting, as evidenced in cases such as *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984) and *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989), but particularly with cases involving cost-shifting under statutes that provide perhaps the closest analogue to the circumstances *sub judice*, *i.e.*, those that allow for the recovery only of "actual" fees "incurred." *See, e.g.*, 28 U.S.C. § 1447(c); 42 U.S.C. § 4654(c). The latter cases generally have refused to employ composite hourly rates, recognizing that the purpose of such statutes is to reimburse, rather than deter. *See Wisc. v. Hotline Indus.*, 236 F.3d 363, 367 (7th Cir. 2000) (construing 28 U.S.C. § 1447(c)); *Wash. Metro. Area Transit Auth. v. United States*, 57 Fed. Cl. 148, 153-54 (2003) (limiting, based on defendant's argument, the plaintiff's recovery under 42 U.S.C. § 4654(c) to the actual salary and benefits of its employees, plus a limited allowance for overhead). As the same policy predicate is furthered by cost shifting here, the same result – the rejection of a composite rate – should also be the case. *Eadem est ratio, eadem est lex*.

Defendant also did not provide any detailed breakdown of the tasks associated with the data retrieval, let alone some indication as to how it arrived at its estimate of 109.5 hours to perform the retrieval. Without some level of detail as to the former, one must wonder about the accuracy of the latter. But, this is only one of many questions left unanswered by defendant. We do not know, for example, whether the estimate provided relates only to the time needed to obtain data from the current year for existing employees, as opposed to data from earlier years for retired or separated employees, or even how much of that time relates to obtaining names versus addresses. It would seem highly unlikely that the entire 109.5 hours would be needed to cull data for existing employees from a database that contains data used to pay those employees on a biweekly basis, but if that is true, then defendant has failed to provide any estimate of the time needed to obtain data for past years. Either way, there is a problem. Nor do we know what sort of effort or sophistication is needed to mine this data – do some queries require a few keystrokes and several minutes, others need a spreadsheet and a few hours, and still others require manual searches that could go on for days? Costs associated with some of these tasks might be insubstantial, while those associated with others might drive an accurate estimate of the costs involved here. Again, we do not know. Indeed, while defendant conceivably could not accurately estimate all the time and costs associated with every task involved here, it surely could have provided more information as to the key tasks to be undertaken, perhaps enough to convince the court to shift certain costs to plaintiffs, at least *ab initio*. But, for reasons unexplained, defendant did not provide even this basic information. Given what defendant has provided (or, more accurately, has ***not*** provided), the court can only relieve defendant of the costs of identification if it presumes that defendant's estimate is reasonable. But, the court neither will indulge in that blithe assumption nor speculate as to details that defendant was provided not one,

but two opportunities to supply. Were the shoe on the other foot, defendant would demand at least as much – and it would be right.

Under the circumstances, requiring defendant to bear certain identification costs should not be viewed as sanction, *cf. Nagy v. Jostens, Inc.*, 91 F.R.D. 431, 432 (D. Minn. 1981), but rather as the result of its failure to put this court in the position to exercise its discretion. Several courts, indeed, have held that a defendant should bear the cost of identification or notice where it fails to provide adequate information from which the court can determine the substantiality of the costs involved.[7] Although few in number, these cases are consistent with many others involving Rule 26(c), the rule to which the Supreme Court harkened in crafting the "substantiality" test. The latter cases hold that costs will not be shifted if the recipient of a discovery request cannot demonstrate that a discovery expense is "undue."[8] Although, as *Sanders* noted, the analogy between RCFC 23(c) and 26(c) is imperfect, it still makes eminent legal sense to have the burden of demonstrating the need for cost shifting be borne by the party that is going to perform the work and has virtually all the information regarding the applicable costs, particularly where discovery is unavailable. *See Barahona-Gomez*, 167 F.3d at 1236-37 (burden of showing need for cost shifting under Rule 23(c) is on the defendant); *see generally Chicago Teachers Union v. Hudson*, 475 U.S. 292, 306 (1986) (indicating that "basic consideration of farness compel" that the burden lie on the party "possess[ing] the facts and records"); *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 239-40, n.40 (1977) (same) (quoting *Bhd. of Ry. & S.S. Clerks v. Allen*, 373 U.S. 113, 122 (1963)); *cf. Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006).[9] Even though, consistent with *Sanders*, the evidentiary burden for shifting costs ought to be lesser here than in the context of Rule 26(c), reason commands that even that lesser burden cannot be met where the proof offered is unresponsive and impenetrable.

---

[7] *See Alzawkari v. Am. S.S. Co.*, 1989 WL 75917 at *1 (6th Cir. 1989); *Kan. Hosp. Ass'n v. Whiteman*, 167 F.R.D. 144, 147 (D. Kan. 1996); *see also* Comment, "Cost of Notice in Class Actions After *Oppenheimer Fund, Inc. v. Sanders*," 78 Colum. L. Rev. 1517, 1528 (1978) (*Sanders* infers that "trial courts will have the discretion to evaluate the reasonableness of the defendant's estimate, and reject or modify the reimbursement request where required in the interest of fairness").

[8] *See*, *e.g.*, *Zubulake v. UBS Warburg, LLC*, 216 F.R.D. 280, 283 & n.30 (S.D.N.Y. 2003); *Marshall v. S.K. Williams Co.*, 462 F. Supp. 722, 724 (D. Wis. 1978); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981); Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8 Federal Practice and Procedure § 2035 at p. 484 (2d ed. 1994).

[9] To be sure, the Newburg treatise states that "the representative plaintiff has the burden to show that the costs and difficulty to defendant is minimal." 3 Newburg, *supra*, at § 8:8 & n.12. As authority for this proposition, that treatise cites only *Sanders*, 437 U.S. at 357 n.24. However, neither the cited footnote nor any other passage of the Supreme Court's opinion addresses who must demonstrate substantiality as it relates to notice costs. The court believes that the better rule is as stated above.

Finally, recalling that *Sanders* did not "attempt to catalogue the instances in which a . . . court might be justified in placing the expense on the defendant," 437 U.S. at 358, the court finds that the somewhat unique posture of this case buttresses its conclusion that the costs of data retrieval ought to be borne by defendant. Although *Sanders* teaches that "[a] bare allegation of wrongdoing . . . is not a fair reason for requiring a defendant to undertake financial burdens and risks to further a plaintiff's case," *id.,* a series of cases have held that where a defendant's liability has either been preliminarily or finally established, *via* preliminary injunction or partial summary judgment, the costs of notice may more readily be imposed upon a defendant.[10] In the case *sub judice*, defendant has essentially admitted that plaintiffs' construction of the relevant statute (5 U.S.C. § 5545) is correct, relying for that purpose upon *Lanehart v. Horner*, 818 F.2d 1574 (Fed. Cir. 1987). Here, as well as in *Abrams v. United States*, 57 Fed. Cl. 439, 440-41 (2003), which involved similar facts and issues, defendant resisted class certification by arguing that there was no overriding common question of law because plaintiffs' construction of the controlling statute was correct. Although this admission does not, *per se*, give rise to a finding of "liability" because the admitted statutory construction has yet to be applied to an individual fact situation, it certainly reveals this case as involving more than a "bare allegation of wrongdoing." *See* 3 Newberg, *supra*, at § 8:6 ("the earlier establishment of a prima facie case may sufficiently alter the fabric of the litigation to justify exceptional treatment"). Indeed, while, in *Abrams*, defendant intimated that it might owe premium pay to as many as 1,800 individuals, it appears that far fewer individuals have been paid, perhaps awaiting this lawsuit to receive their day in court. While these circumstances do not provide an independent basis for refusing to shift the cost of identification to plaintiffs – and are not relied on, as such – they do support the court's overall decision to leave certain costs initially where they will lie, that is, with defendant.[11]

In sum, based on defendant's representations, the court is left with no option but to conclude that the costs associated with most of the identification tasks are insubstantial, and, therefore, will not be shifted to the representative plaintiffs. Accordingly,

---

[10] *See, e.g., Allen v. Leis*, 2002 WL 1752279 at *2 (S.D. Ohio 2002); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 641 F. Supp. 259, 264 (D. Ariz. 1986), *judgment modified on other grounds*, 904 F.2d 1301 (9th Cir. 1990); *Catlett v. Mo. Highway & Transp. Com'n*, 589 F. Supp. 949, 951-52 (W.D. Mo. 1984); *Kyriazi v. W. Elec. Co.*, 465 F. Supp. 1141, 1144 (D. N.J. 1979), *aff'd*, 647 F.2d 388 (3d Cir. 1981); *Meadows v. Ford Motor Co.*, 62 F.R.D. 98, 102 (W.D. Ky. 1973), *judgment modified on other grounds*, 510 F.2d 939 (6th Cir. 1975), *cert. denied*, 425 U.S. 998 (1976); *Ostapowicz v. Johnson Bronze Co.*, 54 F.R.D. 465, 467 (W.D. Pa. 1972).

[11] Should it ultimately prevail in this action, defendant, of course, could seek to have the actual expenses associated with the retrieval tasks be taxed as costs. *See, e.g., Leist v. Tamco Enters., Inc.*, 1984 WL 2425 at *9 (S.D.N.Y. 1984); *Chevalier v. Baird Sav. Ass'n*, 72 F.R.D. 140, 147 n.12 (E.D. Pa.1976); *Herbst v. Int'l Tel. & Tel. Corp.*, 65 F.R.D. 13, 21 (D. Conn. 1973), *aff'd*, 495 F.2d 1308 (2d Cir. 1974).

(1) On or before October 16, 2006, defendant shall provide to plaintiffs a list of all civilian employees at Navy medical facilities who, at any time since April 18, 1998, received some amount of "premium pay" for working at night.

(a) This list shall contain the following information for each individual:

(i) Name;

(ii) Last four digits of the individual's social security number;

(iii) A unit identification code (UIC) identifying the location of the responsible employing facility;

(iv) A submitting office number (SON) identifying the servicing personnel office; and

(v) A code identifying whether the individual received night differential premium pay (ND) and/or night shift work pay (ZJ).

(b) Defendant will also provide the UIC codes for all Navy medical facilities, including facility name and location, and with the SON codes, including office location.

(c) For the current-year list, defendant will also provide a home address for each employee listed.

(d) For any identified employee for whom an address is needed and who can be identified as having retired, defendant will request the Office of Personnel Management to provide a home address.

(e) For any identified employee for whom an address is otherwise needed, defendant shall cooperate with plaintiffs' efforts to locate those class members, including making available any databases

maintained by the United States that might contain those addresses, to the extent permitted by law.

(f) Defendant shall bear the cost of all the above tasks.

(g) To the extent addresses are not available for an employee after pursuing the above methods, the parties will confer further regarding the best alternative method for identifying the most recent home address for each employee.

(2) On or before August 25, 2006, the parties shall file a joint status report containing a proposed protective order for the information that will be contained in the lists, and the content of the class notice to be sent to each identified employee. To the extent that the parties are unable to agree upon the language for these items, each party will submit, as part of the joint report, their separate views.

(3) On or before October 30, 2006, the parties shall submit a joint status report indicating how this case should proceed.

(4) The court expects that, in good faith, the parties will fully cooperate in accomplishing the various tasks that need to be performed to perfect the class action here.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge