# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

1. Joseph Barnes
2. Kaylene Holub
3. Socorro Yosuico

for themselves and on behalf of all others similarly situated,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA

Defendant.

Case No. 04-1335C

**PLAINTIFFS' BRIEF REGARDING DEFENDANT'S PROPOSED COUNTERCLAIM**

(Judge Allegra)

Pursuant to the Court's November 17, 2006 Order, the Court requested briefing relative to Defendant's proposed counterclaim as follows: (1) The impact of Defendant's proposed counterclaim on a class action; and (2) more specifically, the extent to which Defendant's proposed counterclaim should be addressed in the class notice distributed to potential class members. Plaintiffs respectfully submit the following brief in response.

## I. RELEVANT FACTUAL BACKGROUND

Plaintiffs filed this lawsuit on August 18, 2004. Plaintiffs' first amended complaint was filed on November 16, 2004. Defendant filed its Answer on December 16, 2004. On November 3, 2005, the Court issued an Order certifying this case as a class action with respect to class members whose "nightwork" premium pay went unpaid in two specific instances: (1) when on paid leave for periods of less then eight (8) hours within a pay period, and/or (2) when excused from duty on officially authorized holidays under 5 U.S.C. §§ 6103 and 6104. On October 16, 2006, Defendant provided Plaintiffs with a list of 4,684 potential class members.

On November 15, 2006, for the first time, Defendant's counsel asked Plaintiffs to stipulate to the filing of an amended answer and counterclaim for alleged overpayments made to Plaintiffs with regard to "pay differentials for night work." Defendant's counsel did not provide any specifics as to which of the Plaintiffs and/or the 4,684 potential claimants allegedly owe a debt to the United States to repay overpayments of night premium pay, the amount of each alleged overpayment, the reason(s) why the United States did not avail itself of existing administrative procedures to collect such alleged overpayments, whether such alleged overpayments related to "nightwork" premium pay generally, or whether the alleged overpayments specifically were related to the issues involved in this lawsuit (i.e., holiday pay and paid leave of less than eight (8) hours in a pay period). Thereafter, on November 17, 2006, Defendant's counsel for the first time raised the amended answer and counterclaim issue with the Court during the scheduled telephonic status conference. Other than indicating that the alleged overpayment related to night premium pay, Defendant's counsel provided no specifics to the Court.

## II. SUMMARY OF ARGUMENT

Before the Court can resolve the issue of whether the class notice should contain disclosure regarding Defendant's potential counterclaim or offset, it must first decide whether it is even appropriate for Defendant to pursue a counterclaim against the absent class members, particularly in view of the timing of Defendant's request almost two years after it filed its Answer and over one year after the Court certified the class. As discussed below, Defendant's proposed counterclaim should not be allowed for several reasons: (1) Courts have generally found that absent potential class members are not subject to a counterclaim; (2) for Defendant to



SD\1678495.1
356616-1

assert a counterclaim in a class action, the counterclaim would have to satisfy the requirements of Rule 23[1], which Defendant has not done; (3) Defendant will not be prejudiced by disallowance of its late counterclaim because it may pursue its claims through alternative established administrative procedures; and (4) the prejudicial effect of the counterclaim on thousands of class members who do not owe any debt to the United States for any overpayments would be far reaching because it would operate to deter class participation and frustrate the very underpinnings of class action procedure established pursuant to Rule 23.

## III. A COUNTERCLAIM AGAINST UNNAMED, ABSENT POTENTIAL CLASS MEMBERS SHOULD NOT BE ALLOWED IN THIS CASE

The specific details of Defendant's proposed counterclaim are unknown. In fact, all that is known at this time is that Defendant's counsel claims that it is related to alleged overpayments of night premium pay. If it is Defendant's position that the counterclaim relates specifically to certain individual potential class members who have not "opted-in" to the class, the counterclaim fails because generally counterclaims may not be asserted against absent class members. On the other hand, if it is Defendant's position that the counterclaim is as to the plaintiff class as a whole, the counterclaim still fails unless Defendant satisfies the prerequisites of Rule 23 by persuading the Court to amend its Order certifying the class.

### A. A Counterclaim Against Absent Class Members Generally May Not be Asserted.

To the extent Defendant is attempting to assert a counterclaim against individual class members who are absent and who are not named as parties to the suit, such effort should not be allowed. Typically, counterclaims are governed by Rule 13. However, the generally consensus

---

[1] All Rule citations are to the Rules of the United States Court of Federal Claims.

of the courts is that absent class members are generally not subject to counterclaims. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) (finding that absent class members are "almost never subject to counterclaims or cross-claims"); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1259 n. 14 (11th Cir. 2003)("Rule 13 . . . is inapplicable in class action suits, because 'absent class members are not opposing or litigating adversaries for purposes of Rule 13.'"); *Donson Stores, Inc. v. Am. Bakeries Co*., 58 F.R.D. 485, 489 (1973)(finding that absent class members are not parties for purposes of Rule 13); *In re Sugar Indus. Antitrust Litigation,* 73 F.R.D. 332, 349 (1976)(dismissing counterclaims against unnamed class members because they are not parties for purposes of Rule 13); Alba Conte & Herbert Newberg, Newberg on Class Actions §4:34 at p. 299-300 (4th ed.) (hereafter "Newberg"). A counterclaim against class members is nearly always asserted against the class members individually. Newberg, §4:34 at p. 302. It is the rare exception for a counterclaim to be against an entire class. *Id.*

Rule 13 (a) and (b), RCFC, specifically provide that a counterclaim lies as to "any claim which, at the time of serving the answer, the defendant has against any plaintiff...." Accordingly, Defendant's request to bring a counterclaim against certain individual absent class members should be denied because it is procedurally disallowed as contrary to the underlying premise of Rule 13 as to against whom a counterclaim may lie.

**B. Defendant's Counterclaim Does Not Meet the Prerequisites of Rule 23.**

Even if the Court concludes that this is one of those rare circumstances where a Defendant is permitted to bring a counterclaim against a class as a whole, Defendant may not maintain such counterclaim without first meeting the prerequisites for class treatment under Rule 23. *See Donson Stores, Inc.,* 58 F.R.D. at 489; Newberg, §8:31 at p. 254-55 ("most courts now agree that absent class members are not subject to counterclaims unless the defendant independently satisfies Rule 23 requirements for a counterclaimant's class"). Here, Defendant



SD\1678495.1
356616-1

has made no effort to establish that Rule 23 requirements have been met with regard to its proposed counterclaim. In fact, Defendant has not shown that the alleged overpayment claims against individual class members are typical of the class or result from a systemic problem with Defendant's night premium pay procedures.

Before this Court should consider allowing Defendant to assert a counterclaim against all members of the plaintiff class, Defendant should first be required to show that a majority, if not all, of the class members were overpaid wages in a specific instance that are subject to recoupment. Given that Defendant has all the names of the potential class members and the payroll records, Defendant should have no problem with the Court requiring such a showing before a counterclaim can be considered.

In addition, any alleged overpayment claim that Defendant may have is more than likely against a very limited number of potential class members – not the class as a whole. In the *Abrams* case involving 52 plaintiffs who worked regular night schedules for the Navy at Balboa Navy Hospital, **Defendant did not claim that any of the plaintiffs were overpaid night premium pay**. Defendant did not claim any offsets or allege any counterclaims for overpayment. Those plaintiffs were members of precisely the same group of employees who are potentially members of the class certified by the Court in the case at bar. The government's expert in *Abrams*, Dr. Chester I. Palmer, analyzed individual pay data supplied by the Navy for 6,035 pay periods in which night premium pay had been paid to forty (40) Navy employees who were health care professionals over a period of years; over one thousand (1,000) additional pay periods were analyzed by the Navy in which night premium pay had been paid to twelve (12) other plaintiffs who were employed in clerical positions.

The Defense Finance and Accounting Service (DFAS) is responsible for calculating and paying the wages, including night premium pay, to all employees of the Department of Defense on a bi-weekly pay period basis. The administration of computer programs calculating payment of the ten percent (10%) night premium required by statute is straightforward and uncomplicated. DFAS computers regularly monitor these bi-weekly payments against time and attendance records to detect relatively rare instances of overpayment based on the "time & attendance" data. When such errors are discovered by the computer program, any overpayment is collected from the employee by deducting the overpayment in subsequent pay periods for what DFAS claims is a "Time & Attendance Correction Debt". Those adjustments to correct any debt created by previous overpayment are made promptly in subsequent pay periods in accordance with the Debt Collection Improvement Act of 1996. On occasion, employees also will be charged with "Retroactive Earnings" in subsequent pay periods that will collect such indebtedness by deducting previous overpayments of night differential pay, overtime pay, or Sunday premium pay from the employees' "Current Earnings" during the current pay period. Examples of these kinds of automatic adjustments are attached as Plaintiffs' Exhibit 1.

Defendant has not explained the extent of the alleged overpayments, nor why such overpayments of premium pay were not automatically collected by DFAS. Accordingly, without an affirmative showing by Defendant, it is highly unlikely that any meaningful portion of the 4,684 potential class members owe any overpayment of night premium pay to Defendant. Thus, Defendant's proposed counterclaim is not typical of the class, which is a prerequisite to proceeding under Rule 23.

At this point, Defendant offers only an unsubstantiated claim that it is necessary for it to file a counterclaim against unidentified Plaintiffs and potential class members in order to recoup

alleged overpayment of night premium pay. Defendant should not be permitted to pursue this counterclaim without making a substantial advance showing of the breadth and scope of the potential liability by a substantial number of the class members and compliance with Rule 23.

## IV. DEFENDANT'S COUNTERCLAIM WOULD HAVE A HIGHLY PREJUDICIAL IMPACT UPON POTENTIAL CLASS MEMBERS WHO DO NOT OWE ANY UNCOLLECTED DEBT FOR OVERPAYMENT OF NIGHT PREMIUM PAY

In determining whether the allowance of Defendant's counterclaim will be prejudicial, the Court should balance the harm that allowing the counterclaim would have on the class against the potential benefits the counterclaim would reap for Defendant. Here, not only does the threat of an unjustified and unsubstantiated counterclaim against individual potential class members who do not owe any such uncollected debt to the United States operate as a disincentive for class members to opt into the class, it also may later be used against Plaintiffs as a means to challenge class certification. Both outcomes are highly prejudicial to Plaintiffs, whereas, there has been no showing that Defendant would be prejudiced substantively by the disallowance of a counterclaim.

### A. Allowance of the Counterclaim Would Prejudice Plaintiffs.

It is well known that allowing counterclaims against absent class members discourages participation in the class and nullifies the objectives of Rule 23. Newberg, §4:34 at p. 306 . Thus, one very important reason for disallowing Defendant to counterclaim against absent class members is that counterclaims are often abused as litigation tactics to discourage class members from participating in the class. *Donson Stores, Inc.*, 58 F.R.D. at 489; *Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 (2d Cir. 1978). When absent class members are discouraged from participating in the class, the utility of class action procedure is defeated because the individual does not avail himself of the opportunity to pursue his claim through the most judicially economical and efficient manner. Newberg, § 3:34 at p. 307. These divisive tactics are

particularly prejudicial when leveled broadside against the entire class which includes thousands of potential class members who Defendant can not demonstrate that they are even subject to the charges alleged in the counterclaim.

Defendant's proposed counterclaim is nothing more than an effort to bootstrap into this case an unrelated claim that it will first use to scare off absent class members and then later use to attack class certification. Moreover, the timing of Defendant raising its counterclaim only further bolsters that this is the true motive behind the assertion of the counterclaim. Defendant has at all times been in control of the payroll records and is in the best position to know whether overpayments have been made. There is an established administrative procedure to collect such debts in a timely fashion. Yet, Defendant remained silent for approximately 2 years as to any potential counterclaim to recoup overpayments and has not made any affirmative showing that such debts actually lie uncollected against a predominant number of potential class members. Defendant did not raise the issue in its Answer nor did it file a counterclaim with its Answer. Rather, Defendant waited two years until after the class was certified and just before the class notice was to be sent before it "discovered" that it had a potential counterclaim against unnamed absent class members. The timing is noteworthy.

### B. Defendant Suffers No Prejudice By Denial of its Request to Bring a Counterclaim.

Decisions concerning motions to amend are within the sound discretion of the court. *Rockwell Automation, Inc. v. United States,* 70 Fed. Cl. 114, 122 (2006). Although leave to amend under Rule 15 should be freely granted "when justice so requires," there must be an absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *Id.* Similarly, late



SD\1678495.1
356616-1

counterclaims are governed by Rule 13(f) and require leave of Court and may be granted "when justice requires." Here, an examination of the facts evidences that justice does not require that Defendant be allowed to amend its answer or file a late counterclaim.

Defendant will not suffer any prejudice if its request to file a counterclaim is denied because Defendant may still pursue any such claim against absent class members independently in a more proper and convenient forum. Newberg, § 4:34 at p. 307. Defendant is in the enviable position of having available to it specialized administrative procedures that are a more effective, expeditious and efficient means to pursue its counterclaim. First, Defendant's wage payment systems have a means for automatic recovery of erroneous overpayments that it utilizes. Second, the United States Code and supporting regulations provide for an administrative procedure for Defendant to recover overpayments. *See* 5 U.S.C. §5514; 31 U.S.C. §§3711-3719. In the case of absent class members that are current employees, Defendant may pursue an administrative procedure to collect any overpayment directly from future wage payments to the employee. *See* 5 U.S.C. § 5514; 5 C.F.R. §§179.101, *et seq.;* 5 C.F.R. §§ 550.101, *et seq.* With respect to absent class members that are former employees, Defendant may collect the overpayment through the administrative process set forth in the Federal Claims Collection Standards, which includes administrative offsets, tax refund offsets and federal salary offsets. *See* 31 U.S.C. §§ 3711-3719; 31 C.F.R. 900, *et seq.* The administrative procedures available to Defendant provide for an expedient method for collection of debts owed to the government because the debt can be collected through an offset of money owed by the government to the individual such as salary or tax refunds. Thus, Defendant's pursuit of any alleged overpayment is better suited for resolution through the administrative procedures because it will result in a much more expedient and greater likelihood of recovery than would be available through the current litigation.

The only advantage Defendant reaps from pursuing the counterclaim in this forum is the tactical advantage that results from the threat to absent class members that if they opt in they may be subject to a counterclaim which in turn discourages their participation in the class action. Allowing Defendant's counterclaim for this purpose, especially in light of the other administrative procedures available to Defendant and that many if not most of the absent class members do not owe any such uncollected debt, does not serve the interests of justice nor outweigh the prejudice that would be suffered by the class.

## V. DEFENDANT'S PROPOSED COUNTERCLAIM SHOULD NOT BE INCLUDED IN THE CLASS NOTICE

In light of the foregoing, Defendant's counterclaim should not be allowed or included in the notice to class members. However, Plaintiffs do not dispute that if this court, after an appropriate showing, determines in its discretion that Defendant may potentially pursue overpayments against absent class members, that the potential class members should be notified in the class notice of the potential overpayments.

However, to mitigate the intimidating effect of such overpayment language in the class notice, Defendant should be required to identify which individual members of the class it has a viable overpayment claim against, and then, only those class members identified by Defendant as the subject of a viable overpayment claim would receive a notice that includes disclosure of such claim. The remaining class members, which will likely be the vast majority of the class, should receive a class notice that does not mention the potential of an overpayment claim because such notice would not be applicable to them.

In addition, any class notice that includes information regarding a potential overpayment defense would need to be carefully drafted, and should be brief and balanced. *In re Sugar Indus. Antitrust Litigation*, 73 F.R.D. 332, 349 (1976)(acknowledging a *brief* description of the

potential counterclaim is appropriate for inclusion in the class action notice); *Abulaban v. R.W. Pressprich,* 51 F.R.D. 496, 497 (S.D.N.Y. 1971)(suggesting that one sentence may be sufficient). Lastly, based on Defendant's counsel's description of the potential overpayment during the November 17, 2006 telephonic status conference, any language in the class notice regarding alleged overpayments should be limited to and phrased as an "offset" that would apply to any uncollected overpayments of night premium pay and that would only reduce any amount Defendant owes to the class member. As such, any such "offset" would not provide a vehicle for Defendant to collect overpayments from any individual class member that exceeds the amount Defendant owes the class member in this lawsuit. Of course, Defendant would still have its own administrative procedures available to it to collect any additional overpayments from its current or former employees.

Respectfully submitted,

s/Robert W. Brownlie
ROBERT W. BROWNLIE
DLA Piper US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone: (619) 699-2854
Facsimile: (619) 699-2701

Attorneys for Plaintiffs

Date: December 4, 2006

Of Counsel:

CURTIS R. COTTON
DLA Piper US LLP
San Diego, CA

IRA M. LECHNER
Escondido, CA



SD\1678495.1
356616-1

# EXHIBIT 1

# DEPARTMENT OF DEFENSE
# CIVILIAN LEAVE AND EARNINGS STATEMENT

| | |
|---|---|
| 1. PAY PERIOD END | 01/22/05 |
| 2. PAY DATE | 01/28/05 |
| 3. NAME | [redacted] |
| 4. PAY PLAN/GRADE/STEP | GS 12 08 |
| 5. HOURLY/DAILY RATE | 37.71 |
| 6. BASIC OT RATE | 38.48 |
| 7. BASIC PAY + LOCALITY ADJ = ADJUSTED BASIC PAY | 77712.00 + 981.00 = 78693.00 |
| 8. SOC SEC NO | [redacted] |
| 9. LOCALITY % | 17.68 |
| 10. FLSA CATEGORY | E |
| 11. SCD LEAVE | 04/07/80 |
| 12. MAX LEAVE CARRY OVER | 240 |
| 13. LEAVE YEAR END | 01/07/06 |
| 14. FINANCIAL INSTITUTION - NET PAY | NAVY FEDERAL CREDIT UNION |
| 15. FINANCIAL INSTITUTION - ALLOTMENT #1 | |
| 16. FINANCIAL INSTITUTION - ALLOTMENT #2 | |

| 17. TAX | MARITAL STATUS | EXEMPTIONS | ADD'L |
|---|---|---|---|
| FED | M | | |
| CA | M | | |

| 18. TAX | MARITAL STATUS | EXEMPTIONS | ADD'L | TAXING AUTHORITY |
|---|---|---|---|---|

19. CUMULATIVE RETIREMENT: CSRS: 71420.04

20. MILITARY DEPOSIT:

| 21. | CURRENT | YEAR TO DATE |
|---|---|---|
| GROSS PAY | 3399.26 | 7416.72 |
| TAXABLE WAGES | 3138.42 | 6865.24 |
| NONTAXABLE WAGES | | |
| TAX DEFERRED WAGES | 301.68 | 592.32 |
| DEDUCTIONS | 1201.18 | 2529.61 |
| AEIC | | |
| NET PAY | 2238.92 | 4927.95 |

22. TSP DATA 10%

## CURRENT EARNINGS

| TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| REGULAR PAY | 80.00 | 3016.80 | NIGHT DIFF | 52.25 | 196.98 | SUNDAY PREM | 24.00 | 226.32 |

## DEDUCTIONS

| TYPE | CODE | CURRENT | YEAR TO DATE | TYPE | CODE | CURRENT | YEAR TO DATE |
|---|---|---|---|---|---|---|---|
| DEBT,ROUTINE | Q2 | 40.84 | 40.84 | FEGLI | C0 | 12.15 | 23.85 |
| MEDICARE | | 49.88 | 108.13 | RETIRE, CSRS | 1 | 211.18 | 414.63 |
| TAX, FEDERAL | | 455.76 | 1039.40 | TAX, STATE | CA | 129.69 | 310.44 |
| TSP SAVINGS | | 301.68 | 592.32 | | | | |

## LEAVE

| TYPE | PRIOR YR BALANCE | ACCRUED PAY PD | ACCRUED YTD | USED PAY PD | USED YTD | DONATED/ RETURNED | CURRENT BALANCE | USE-LOSE/ TERM DATE |
|---|---|---|---|---|---|---|---|---|
| ANNUAL | 240.00 | 8.00 | 8.00 | 12.00 | 12.00 | | 236.00 | 196.00 |
| SICK | 994.00 | 4.00 | 4.00 | 12.00 | 12.00 | | 986.00 | |
| HOLIDAY | | | | 12.00 | 12.00 | | | |

## REMARKS

$ 40.84 COLLECTED THIS PAY PERIOD FOR A $ 40.84 (LESS AMT APPLIED LEAVES A REMAINING BALANCE $ 0.00) TIME & ATTENDANCE CORRECTION DEBT IN ACCORDANCE WITH DEBT COLLECTION IMPROVEMENT ACT OF 1996. PAYROLL OFFICE CUSTOMER SERVICE DESK (843)746-6498 DSN (483).
YOUR PAYROLL OFFICE ID NUMBER IS 97380600 - DEPARTMENT OF DEFENSE.
USE THE WORK NUMBER FOR EMPLOYMENT VERIFICATION: 1-800-367-2884 OR WWW.THEWORKNUMBER.COM.
DIRECT DEPOSIT IS FASTER AND SAFER THAN A CHECK, AND IN COMBINATION WITH IRS E-FILE, YOU COULD GET YOUR FEDERAL INCOME TAX REFUND IN HALF THE TIME.
BASIC PAY CHANGED.
RETROACTIVE TIME AND ATTENDANCE ADJUSTMENTS PROCESSED.

THIS REPORT CONTAINS INFORMATION SUBJECT TO THE PRIVACY ACT OF 1974 AS AMENDED

[redacted]

| | CURRENT | YEAR TO DATE |
|---|---|---|
| GROSS PAY | 3486.68 | 59956.71 |
| TAXABLE WAGES | 3129.76 | 53207.12 |
| NONTAXABLE WAGES | 91.00 | 1722.60 |
| TAX DEFERRED WAGES | 265.92 | 5046.00 |
| DEDUCTIONS | 1292.31 | 21710.46 |
| AEIC | | |
| NET PAY | 2221.65 | 38475.98 |

TSP DATA
10%

## CURRENT EARNINGS

| TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| REGULAR PAY | 80.00 | 2669.20 | TOUR DIFF | 80.00 | 267.20 | SUN PREM T38 | 24.00 | 200.16 |
| HOL PREM T38 | 12.00 | 400.20 | | | | | | |

## RETROACTIVE EARNINGS

| TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| TOUR DIFF | -3.83 | -12.80 | | | | | | |

## DEDUCTIONS

| TYPE | CODE | CURRENT | YEAR TO DATE | TYPE | CODE | CURRENT | YEAR TO DATE |
|---|---|---|---|---|---|---|---|
| DEBT,ROUTINE | Q1 | 27.28 | 210.72 | DEBT,ROUTINE | Q2 | | 17.01 |
| FEGLI | E1 | 10.80 | 204.90 | FEGLI OPTNL | C | 1.45 | 27.55 |
| FEHB | LB2 | 91.00 | 1722.60 | MEDICARE | | 49.24 | 844.67 |
| OASDI | | 210.53 | 3611.69 | ORG/UNION | KBWA | 15.00 | 285.00 |
| RETIRE, FERS | K | 21.27 | 403.62 | TAX, FEDERAL | | 396.07 | 6047.42 |
| TAX, STATE | CA | 203.75 | 3289.28 | TSP SAVINGS | | 265.92 | 5046.00 |

## LEAVE

| TYPE | PRIOR YR BALANCE | ACCRUED PAY PD | ACCRUED YTD | USED PAY PD | USED YTD | DONATED/ RETURNED | CURRENT BALANCE | USE-LOSE/ TERM DATE |
|---|---|---|---|---|---|---|---|---|
| ANNUAL | 240.00 | 8.00 | 144.00 | | 180.00 | | 204.00 | 28.00 |
| SICK | 420.00 | 4.00 | 72.00 | | 56.00 | | 436.00 | |
| HOLIDAY | | | | | 12.00 | | | |

## REMARKS

$ 27.28 COLLECTED THIS PAY PERIOD FOR A $ 40.08 (LESS AMT APPLIED LEAVES A REMAINING BALANCE $ 0.00) TIME & ATTENDANCE CORRECTION DEBT IN ACCORDANCE WITH DEBT COLLECTION IMPROVEMENT ACT OF 1996. PAYROLL OFFICE CUSTOMER SERVICE DESK (843)746-6500 DSN (483).
YOUR PAYROLL OFFICE ID NUMBER IS 97380600 - DEPARTMENT OF DEFENSE.
FOR HURRICANE KATRINA FINANCIAL ASSISTANCE INFORMATION, CALL 1-800-538-9043.
PRETAX FEHB EXCLUSION $ 91.00
INDEBTEDNESS COLLECTED FROM RETROACTIVE EARNINGS AND/OR ADJUSTED DEDUCTIONS.
RETROACTIVE TIME AND ATTENDANCE ADJUSTMENTS PROCESSED.

THIS REPORT CONTAINS INFORMATION SUBJECT TO THE PRIVACY ACT OF 1974 AS AMENDED

| 3. NAME | 4. PAY PLAN/GRADE/STEP | 5. HOURLY/DAILY RATE | 6. BASIC OT RATE | 7. BASIC PAY | LOCALITY ADJ. | ADJUSTED BASIC PAY |
|---|---|---|---|---|---|---|
| [redacted] | GS 11 10 | 30.62 | 35.45 | 63908.00 | | |

| 8. SOC SEC NO | 9. LOCALITY % | 10. FLSA CATEGORY | 11. SCD LEAVE | 12. MAX LEAVE CARRY OVER | 13. LEAVE YEAR END |
|---|---|---|---|---|---|
| [redacted] | 12.70 | E | 01/11/84 | 240 | 01/11/03 |

| 14. FINANCIAL INSTITUTION - NET PAY | 15. FINANCIAL INSTITUTION - ALLOTMENT #1 | 16. FINANCIAL INSTITUTION - ALLOTMENT #2 |
|---|---|---|
| WELLS FARGO AND COMPANY | BANK ONE ILLINOIS | |

| 17. TAX | MARITAL STATUS | EXEMPTIONS | ADD'L | 18. TAX | MARITAL STATUS | EXEMPTIONS | ADD'L | TAXING AUTHORITY | 19. CUMULATIVE RETIREMENT | 20. MILITARY DEPOSIT |
|---|---|---|---|---|---|---|---|---|---|---|
| FED | M | 2 | | | | | | | FERS: 3510.12 | |
| CA | S | | | | | | | | | |

| 21. | CURRENT | YEAR TO DATE |
|---|---|---|
| GROSS PAY | 2928.70 | 56771.66 |
| TAXABLE WAGES | 2615.66 | 49634.86 |
| NONTAXABLE WAGES | 68.08 | 1335.52 |
| TAX DEFERRED WAGES | 244.96 | 4801.28 |
| DEDUCTIONS | 1225.94 | 23036.66 |
| AEIC | | |
| NET PAY | 1702.76 | 32735.00 |

22.
TSP DATA
10%

## CURRENT EARNINGS

| TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| REGULAR PAY | 80.00 | 2449.60 | NIGHT DIFF | 72.75 | 222.62 | SUNDAY PREM | 36.00 | 275.78 |

## RETROACTIVE EARNINGS

| TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| NIGHT DIFF | -6.30 | -19.28 | | | | | | |

## DEDUCTIONS

| TYPE | CODE | CURRENT | YEAR TO DATE | TYPE | CODE | CURRENT | YEAR TO DATE |
|---|---|---|---|---|---|---|---|
| ALLOTMENT,SV | #1 | 132.00 | 2640.00 | FEGLI | E1 | 10.23 | 201.51 |
| FEGLI OPTNL | C | 1.45 | 21.30 | FEHB | LB2 | 68.08 | 1335.52 |
| MEDICARE | | 41.75 | 789.32 | OASDI | | 178.55 | 3375.04 |
| ORG/UNION | KBWA | 15.00 | 300.00 | RETIRE, FERS | K | 19.60 | 384.17 |
| TAX, FEDERAL | | 350.91 | 6205.36 | TAX, STATE | CA | 163.41 | 2983.16 |
| TSP SAVINGS | | 244.96 | 4801.28 | | | | |

## LEAVE

| TYPE | PRIOR YR BALANCE | ACCRUED PAY PD | ACCRUED YTD | USED PAY PD | USED YTD | DONATED/ RETURNED | CURRENT BALANCE | USE-LOSE/ TERM DATE |
|---|---|---|---|---|---|---|---|---|
| ANNUAL | 212.00 | 8.00 | 144.00 | | 212.00 | | 144.00 | |
| SICK | 788.00 | 4.00 | 72.00 | | 20.00 | | 840.00 | |
| HOLIDAY | | | | | 32.00 | | | |

## REMARKS

YOUR PAYROLL OFFICE IDENTIFICATION NUMBER IS 97380600.
SHARE YOUR LIFE - CHOOSE ORGAN AND TISSUE DONATION - SHARE YOUR DECISION
FEDERAL EMPLOYEES' LONG TERM CARE (LTC) OPEN SEASON FROM JULY 1 THROUGH DECEMBER 31.
VISIT OPM WEB SITE WWW.OPM.GOV/INSURE/LTC FOR ADDITIONAL ENROLLMENT INFORMATION.
WATCH FOR OUR NEW E/MSS HOME PAGE IN OCTOBER.
PRETAX FEHB EXCLUSION $ 68.08

THIS REPORT CONTAINS INFORMATION SUBJECT TO THE PRIVACY ACT OF 1974 AS AMENDED

# DEPARTMENT OF DEFENSE
# CIVILIAN LEAVE AND EARNINGS STATEMENT

1. PAY PERIOD END: 01/11/03
2. PAY DATE: 01/17/03

| 3. NAME | 4. PAY PLAN/GRADE/STEP | 5. HOURLY/DAILY RATE | 6. BASIC OT RATE | 7. BASIC PAY + LOCALITY ADJ = ADJUSTED BASIC PAY |
|---|---|---|---|---|
| [redacted] | GS 11 06 | 27.96 | 35.45 | 58352.00 |

| 8. SOC SEC NO | 9. LOCALITY % | 10. FLSA CATEGORY | 11. SCD LEAVE | 12. MAX LEAVE CARRY OVER | 13. LEAVE YEAR END |
|---|---|---|---|---|---|
| [redacted] | 12.70 | E | 03/18/85 | 240 | 01/11/03 |

14. FINANCIAL INSTITUTION - NET PAY: WASHINGTON MUTUAL BANK FA (
15. FINANCIAL INSTITUTION - ALLOTMENT #1
16. FINANCIAL INSTITUTION - ALLOTMENT #2

| 17. TAX | MARITAL STATUS | EXEMPTIONS | ADD'L |
|---|---|---|---|
| FED | M | | 50 |
| CA | M | | |

18. TAX / MARITAL STATUS / EXEMPTIONS / ADD'L / TAXING AUTHORITY

19. CUMULATIVE RETIREMENT: FERS: 3092.17

20. MILITARY DEPOSIT

| 21. | CURRENT | YEAR TO DATE |
|---|---|---|
| GROSS PAY | 2416.63 | 5324.07 |
| TAXABLE WAGES | 2148.21 | 4787.23 |
| NONTAXABLE WAGES | | |
| TAX DEFERRED WAGES | 268.42 | 536.84 |
| DEDUCTIONS | 834.84 | 1913.27 |
| AEIC | | |
| NET PAY | 1581.79 | 3410.80 |

22. TSP DATA 12%

## CURRENT EARNINGS

| TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| REGULAR PAY | 80.00 | 2236.80 | NIGHT DIFF | 56.25 | 157.50 | SUNDAY PREM | 12.00 | 83.88 |

## RETROACTIVE EARNINGS

| TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT | TYPE | HOURS/DAYS | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| NIGHT DIFF | -8.39 | -23.50 | SUNDAY PREM | -5.44 | -38.05 | | | |

## DEDUCTIONS

| TYPE | CODE | CURRENT | YEAR TO DATE | TYPE | CODE | CURRENT | YEAR TO DATE |
|---|---|---|---|---|---|---|---|
| FEGLI | CO | 9.46 | 18.92 | MEDICARE | | 33.96 | 76.12 |
| OASDI | | 145.24 | 325.50 | RETIRE, FERS | K | 17.89 | 35.78 |
| TAX, FEDERAL | | 304.41 | 768.73 | TAX, STATE | CA | 55.46 | 151.38 |
| TSP SAVINGS | | 268.42 | 536.84 | | | | |

## LEAVE

| TYPE | PRIOR YR BALANCE | ACCRUED PAY PD | ACCRUED YTD | USED PAY PD | USED YTD | DONATED/ RETURNED | CURRENT BALANCE | USE-LOSE/ TERM DATE |
|---|---|---|---|---|---|---|---|---|
| ANNUAL | 220.00 | 8.00 | 208.00 | 12.00 | 236.00 | | 192.00 | |
| SICK | 612.00 | 4.00 | 104.00 | | 124.00 | | 592.00 | |
| HOLIDAY | | | | 8.00 | 38.00 | | | |

## REMARKS

YOUR PAYROLL OFFICE IDENTIFICATION NUMBER IS 97380600.
INDEBTEDNESS COLLECTED FROM RETROACTIVE EARNINGS AND/OR ADJUSTED DEDUCTIONS.
RETROACTIVE TIME AND ATTENDANCE ADJUSTMENTS PROCESSED.

THIS REPORT CONTAINS INFORMATION SUBJECT TO THE PRIVACY ACT OF 1974 AS AMENDED

DFAS FORM 1 ( REV 3/95 )

CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, 2006, a copy of the foregoing "PLAINTIFFS' BRIEF REGARDING DEFENDANT'S PROPOSED COUNTERCLAIM" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Robert W. Brownlie