# In the United States Court of Federal Claims

No. 04-1335C

(Filed: November 24, 2009)

_____

| | |
|---|---|
| JOSEPH BARNES, | * |
| KAYLENE HOLUB, | * |
| SOCORRO YOSUICO, et al. | * |
| | * |
| Plaintiffs, | * |
| | *   Class action; Civilian pay case – premium |
| | *   pay; Settlement; Preliminary fairness |
| v. | *   approval. |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

_____

**ORDER**

_____

  *Robert W. Brownlie,* DLA Piper Rudnick Gray Cary US, LLP, San Diego, CA, for plaintiffs.

  *Reginald T. Blades, Jr.*, Commercial Litigation, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Tony West*, for defendant.

**ALLEGRA Judge:**

  Pending before the court, in this class action, is the parties' Joint Motion To Approve Settlement Agreement.  The parties assert that, under RCFC 23(e), the court should preliminarily approve the parties' proposed settlement agreement.  For the reasons that follow, the court **GRANTS** this motion.

  The plaintiffs named above filed their initial complaint on August 18, 2004, and filed an amended class action complaint on November 16, 2004.  The proposed class consisted of civilian employees of the Department of Navy who worked at healthcare facilities after August 18, 1998, and who performed "nightwork" under 5 U.S.C. § 5545(a) (*i.e.*, regularly scheduled work between 6:00 p.m. and 6:00 a.m.).  Plaintiffs alleged that the proposed class members were entitled to premium pay for each hour of "nightwork" (at least four hours) at a rate equal to one

hundred and ten percent of the hourly rate of basic pay, pursuant to section 5545. They averred that they did not receive this premium pay when excused on authorized holidays or for authorized leave of less than eight hours within a pay period. On November 3, 2005, the court certified the proposed class. *Barnes v. United States*, 68 Fed. Cl. 492 (2005). In a November 17, 2006 order, the court set the class notification deadline for January 15, 2007, with an opt-in deadline of March 16, 2007. By the latter date, 354 class opt-in forms were returned. In a joint status report dated August 22, 2007, the parties informed the court that they were amenable to settling the case. The ensuing settlement discussions took place over approximately the next two years. On August 14, 2009, the parties jointly moved the court to approve preliminarily their settlement agreement.

The settlement agreement calls for the United States to pay $58,354.24, to be divided among the 354 class members; it leaves unresolved plaintiffs' claims for attorney's fees, costs and expenses. On September 24, 2009, the court ordered defendant to explain why a number of individual class members were listed as receiving zero payouts. On October 7, 2009, defendant responded, its filing explaining that the zero recoveries resulted from either: (i) calculations based upon a class member's individual pay records which resulted in zero or a negative number; or (ii) the rounding down to zero of all payouts of $5.00 or less, per the agreement of the parties.

Pursuant to RCFC 23(e), "[t]he claims, issues or defenses of a certified class may be settled . . . only with the court's approval," requiring a "finding that it is fair, reasonable, and adequate." RCFC 23(e), (e)(2); *see also Berkley v. United States*, 59 Fed. Cl. 675, 677 (2004). Judicial review of a proposed class action settlement "involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).[1] In the first stage of this process, "counsel submit the proposed terms of [the] settlement and the judge makes a preliminary fairness evaluation." Manual for Complex Litigation, § 21.632 (4th ed. 2004); *see also Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001). This evaluation generally is "made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." Manual for Complex Litigation, at § 21.632; *see also In re Elec. Data Sys. Corp., ERISA Litig.*, 2005 WL 1875545, at *4 (E.D. Tex. June 30, 2005). Although non-binding, the preliminary approval establishes "an initial presumption of fairness." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Chun Hoon v. McKee Foods Corp.*, 2009 WL 3349549, at *2 (N.D. Cal. Oct. 15, 2009).

In deciding whether a settlement falls within the range of approval, courts have considered a variety of factors, among them: (i) whether the settlement agreement appears to be

---

[1] *See also Bobbit v. Academy of Court Reporting, Inc.*, 2009 WL 2168833, at *1 (E.D. Mich. July 21, 2009); *Jones v. Commerce Bancorp Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007).

the product of serious, informed, non-collusive negotiations; (ii) whether it improperly grants preferential treatment to class representatives or other members of the class; (iii) whether counsel are experienced and have been adequately informed of the facts via discovery; and (iv) whether the agreement otherwise has obvious deficiencies.[2]  In conducting this evaluation, it is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms.  *See Officers for Justice v. San. Fran. Civ. Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982) ("the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators"); *Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980); *Detroit v. Grinnel Corp.*, 495 F.2d 448, 456 (2d Cir. 1974).

The record, as supplemented by defendant, supports a preliminary finding that the proposed settlement is fair.  The settlement is the result of extensive, arms-length negotiations between counsel experienced in class action litigation.  It was reached only after plaintiffs had sufficient discovery to determine that the benefits of the settlement outweighed the cost of continued litigation.  The parties, moreover, have provided a satisfactory explanation as to why some class members are listed as receiving no recovery.  And they have demonstrated that the payouts to individual class members have been calculated in a uniform fashion, suggesting, at this point, that no class member has received preferential treatment.  Finally, there are no other deficiencies apparent in the settlement agreement.  For these reasons, the court finds that the settlement agreement satisfies the preliminary fairness requirements.

The court will set forth the class notification schedule and the date of the fairness hearing in a separate order.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

[2] .  *See Smith v. Prof. Billing & Mgmt. Serv., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *In re Stock Exch. Options Trading Antitrust Litigation*, 2005 WL 1635158, at *5 (S.D.N.Y. July 8, 2005); *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass 1997); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also* Manual for Complex Litigation, at §21.632; 4 William B. Rubenstein, Alba Conte and Herbert B. Newberg, Newberg on Class Actions § 11.25 (4th ed. 2002).